**IN THE**

# United States Court of Appeals

# For the Second Circuit

_____

August Term, 2020

Argued: September 23, 2020
Decided: March 26, 2021

No. 19-2726-cv

DUSHANNE ASHLEY,

*Plaintiff-Appellant,*

*v.*

CITY OF NEW YORK, DETECTIVE JASON JONES, SHIELD # 6490, DETECTIVE MIKE CIVIL, SHIELD # 2114, SERGEANT LUKE DENESOPOLIS, SHIELD # 392,

*Defendants-Appellees,*

POLICE OFFICERS JANE/JOHN DOE(S) NOS. 1-10,

*Defendants.*

_____

Appeal from the United States District Court
for the Eastern District of New York.
14-cv-5559 – Garaufis, *District Judge.*

_____

Before: CALABRESI, KATZMANN, AND CARNEY, *Circuit Judges*.

————

Plaintiff-Appellant Dushanne Ashley sued Defendants-Appellees under 42 U.S.C. § 1983 alleging false arrest, malicious prosecution, and the denial of his right to a fair trial. At summary judgment, the district court concluded that the police officer who arrested Ashley, Detective Mike Civil, had probable cause to arrest Ashley. The court therefore granted summary judgment to Defendants-Appellees on Ashley's claims for false arrest and malicious prosecution. Ashley's claim for the denial of a fair trial—against Civil only—survived summary judgment and was tried before a jury, which found for Civil. Ashley's motion for judgment as a matter of law was denied by the district court. Ashley appeals the grant of summary judgment to Civil on his false arrest and malicious prosecution claims. He also appeals the denial of his motion for judgment as a matter of law and asserts errors in the jury instructions, both with respect to his fair trial claim.

Although we conclude that the district court erred by relying on a credibility determination at summary judgment, we nevertheless AFFIRM its grant of summary judgment to Civil on the claims for false arrest and malicious prosecution. As to Ashley's claim regarding the denial of his right to a fair trial, we AFFIRM the district court's denial of Ashley's motion for judgment as a matter of law, but we VACATE the judgment in favor of Civil and remand for a new trial because the jury instructions contained a prejudicial error.

————————————————

ROB RICKNER, Rickner PLLC, New York, NY, *for Plaintiff-Appellant.*

JESSE A. TOWNSEND (Richard Dearing, Clause S. Platton, *on the brief*), *for* James E. Johnson, Corporation Counsel of the City of New York, New York, NY, *for Defendants-Appellees.*

————————————————

CALABRESI, *Circuit Judge*:

Plaintiff-Appellant Dushanne Ashley was arrested and charged in New York state court for unlawfully possessing marijuana. The original charging instrument stated that when police executed a search warrant at a Brooklyn apartment, they there found Ashley with the marijuana. Surveillance images later showed, instead, that Ashley had arrived at the apartment after the police. This meant that the original charging instrument was false in its assertion that Ashley was already in the apartment with the drugs when the police arrived. The prosecution superseded the original charging instrument to eliminate the false statement. The superseding instrument charged instead that Ashley arrived after the police did but that he referred to the apartment as his apartment. Ashley contends, however, that he never referred to the apartment as his. The state court dismissed the superseding instrument against Ashley for facial insufficiency shortly thereafter. Ashley then filed suit against Defendants-Appellees alleging various violations of his federal constitutional rights under 42 U.S.C. § 1983. These included claims for false arrest, malicious prosecution, and the denial of his right to a fair trial based on fabricated evidence. The latter claim stemmed from the

inclusion of the two allegedly false statements in the original and the superseding charging instruments (the "fabricated-evidence claim").[1]

The district court (Garaufis, *J.*) granted summary judgment to all Defendants-Appellees on Ashley's claims for false arrest and malicious prosecution because it concluded there was probable cause both to arrest and to prosecute Ashley, respectively. Ashley's fabricated-evidence claim survived summary judgment, but against only one Defendant-Appellee, Detective Mike Civil. After trial on that claim, the jury returned a verdict in Civil's favor, and the district court denied Ashley's motion for judgment as a matter of law. On appeal, Ashley challenges the grant of summary judgment to Civil on the false arrest and malicious prosecution claims, as well as the denial of his motion for judgment as

---

[1] Although our Court has frequently referred to this claim as a "fair trial claim," we adopt the term "fabricated-evidence claim" to avoid confusion given the facts of the case. As noted below, Ashley's criminal prosecution was dismissed before trial. Nevertheless, a claim for fabricated evidence does not require that a plaintiff have been subjected to a trial; it is enough that the fabrication results in a deprivation of the plaintiff's liberty. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (reversing the grant of summary judgment to defendants against a fabricated-evidence claim for charges dismissed before trial). The Supreme Court has similarly used the term "fabricated-evidence" to refer to a claim for the denial of the right to a fair trial. *See McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019).

a matter of law on his claim for fabricated evidence. He also claims errors in jury instructions related to the latter claim.

Although we conclude that the district court's reasoning regarding probable cause was erroneous, we nonetheless uphold its grant of summary judgment to Civil on Ashley's claims for false arrest and malicious prosecution. And while we agree that there was sufficient evidence to support the jury verdict for Civil on Ashley's fabricated-evidence claim, and that therefore his motion for judgment as a matter of law was properly denied, we conclude that the jury charge was tainted by prejudicial error.

We therefore AFFIRM the district court's grant of summary judgment on false-arrest and malicious-prosecution claims. We AFFIRM the district court's denial of judgment as a matter of law on the fabricated-evidence claim, but we VACATE the judgment for Civil and REMAND for a new trial on that claim.

## BACKGROUND[2]

**A. The Arrest and Prosecution**

In March 2013, New York City's 311 hotline received a call from a man identifying himself as Charles Patrick. The caller claimed that his roommate—a "black, tall, muscular, dark-skinned" man with a "[b]ald head"—was selling drugs out of their apartment in Brooklyn and that the roommate refused to move out. Joint App'x at 757. The complaint was referred to Detective Mike Civil, who began an investigation. On Civil's instructions, an undercover officer twice purchased drugs from Charles Patrick at the Brooklyn apartment. Civil then sought and obtained a warrant to search the apartment for narcotics. The warrant named Patrick and included the telephone description of the alleged roommate.

Civil arrived at the apartment and began the search early in the morning of April 19, 2013. [3] He found two people inside the apartment: Charles Patrick, from whom the undercover agent had purchased drugs in the weeks leading up to the

---

[2] We base this factual statement on the record developed at summary judgment, the transcript of the trial held on the fabricated-evidence claim, and other evidence submitted during that trial. We note throughout factual issues that remain disputed.

[3] At trial, the parties disputed whether the police arrived around 5:00 AM or 6:00 AM. This disagreement does not materially affect the outcome of this appeal, however, because the fact remains that Ashley arrived at the apartment after the police.

search, and a man named Jose Carlos, who was lying in a sleeping bag on the floor of the living room. That room was shielded by a curtain and contained an air mattress, a makeshift closet, a television, some weights, and a dresser with a picture of Dushanne Ashley together with a woman. In that room, the police found two ounces of marijuana in eighteen small bags.

Ashley was not in the apartment when the police arrived. The parties dispute whether Ashley was living at the apartment at the time or whether he lived elsewhere with his girlfriend, having only previously lived at the apartment. Regardless, Ashley's possessions (including his pets) were at the apartment. Ashley later stated that on the morning of April 19, 2013, he had received a phone call from Carlos telling him police were at the apartment. Then, according to Ashley, a police officer got on the phone and told Ashley that if he did not come and get his dog from the apartment, it would be taken away. Civil contests Ashley's account of the phone call and the alleged warning about the dog. And although Civil testified that he asked Patrick for Ashley's number, Civil claims he did not call Ashley.

When Ashley arrived at the apartment, Civil arrested him. Civil asserts that he had been in the apartment twice before—in November and December of 2012—

7

and that he then had witnessed police officers arrest Ashley there for narcotics offenses. Civil alleges that he remembered Ashley's possessions, and that because the marijuana was found among Ashley's things, he believed the marijuana belonged to Ashley. He additionally claims that when he first read the transcript from the 311 call, he recognized the name "Charles Patrick" from these earlier arrests. From all this knowledge Civil believed that the person described in the call allegedly made by Patrick was Ashley.

Civil alleges that on the evening of April 19, 2013—the day of the search and of Ashley's arrest—Civil shared all this information with a paralegal or prosecutor with the Kings County District Attorney's Early Case Assessment Bureau (ECAB). He then received from ECAB a criminal complaint (the "First Complaint"), which stated, in relevant part:

> The deponent [Civil] states that . . . [he] observed the defendants [Ashley and Carlos] in possession of approximately two ounces of marihuana, in that the informant did recover said quantity of marijuana from the floor inside a room in which the defendants were sitting.

Joint App'x at 150. Civil testified that he did not actually tell ECAB that Ashley was in the room when he found the marijuana. He also testified that, upon reading this portion of the First Complaint, he noticed it contained what he described as a

8

"slight discrepancy"—namely, the First Complaint stated that Civil observed Ashley in possession of the marijuana and that Civil recovered it from the floor in a room where Ashley was sitting. Joint App'x at 784. Despite noticing this manifest inaccuracy, Civil signed the complaint and faxed it back to ECAB.

Ashley was prosecuted under the First Complaint in New York state court. There was no jury indictment because he was charged only with misdemeanors.

In April 2014, Ashley's defense attorney obtained surveillance images from the apartment building which showed Ashley arriving at the apartment after the police. This meant the First Complaint had falsely asserted that Civil, on arriving, found Ashley with the marijuana in the apartment.

At this point, the prosecution filed a superseding information (the "Second Complaint"), which stated in relevant part:

> The deponent [Civil] states that . . . [he] observed the defendants in possession of approximately two ounces of marihuana, in that the deponent entered [the apartment] and observed defendant Jose Carlos on the floor and defendant Dushanne Ashley did enter said location shortly thereafter and state[d] in sum and substance, see, this is what happens when you let strange people into our apartment, and deponent did recover said quantity of marihuana from the floor.

Joint App'x at 975. Ashley denies that he ever said, "this is what happens when you let strange people into our apartment." The significance of the statement, if

made, is, of course, that it would constitute an admission by Ashley that the apartment in which the marijuana was found was still his apartment.

The origin of this statement is unclear. It appears on an undated "fly page" in Civil's memo book. And the statement was included in only the second of two notices issued by prosecutors under N.Y. Crim. Proc. Law § 710.30(1)(a), which detail a defendant's statements that the prosecution might use at trial. The first notice attributed to Ashley only the statement "I'm tired of this shit." Joint App'x at 976. The second notice, apparently issued around the time the prosecution filed the Second Complaint, did attribute the disputed statement to Ashley.

On July 15, 2014, Ashley's defense attorney moved to dismiss the Second Complaint as facially insufficient. The state court found the Second Complaint facially insufficient, stating: "Just because it is your home you cannot control what people bring into your home and obviously [the police] said they see somebody with the stuff and [Ashley] comes in subsequently. Superseding information facially insufficient." Joint App'x at 287. The court gave the prosecution the option of superseding yet again, but the prosecution did not do so.

On July 18, the court formally dismissed the Second Complaint:

If I come visit you and you have pot in your living room, I am going to get charged, that is what it says here. Basically if you have marijuana in your living room and . . . the police are already in the home, [if] I come after the police[,] . . . I get charged for the marijuana that you are standing by.

. . . .

You guys are going to have to appeal this. This is dismissed. No way . . . .

Joint App'x at 158. The prosecution did not appeal the dismissal.

## B. The Present Lawsuit

On April 20, 2016, Ashley filed this lawsuit in the district court in the Eastern District of New York, claiming violations of his constitutional rights under 42 U.S.C. § 1983. Ashley alleged false arrest, malicious prosecution, failure to intervene, illegal strip search, excessive pre-arraignment detention, and fabricated evidence, in violation of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Defendants-Appellees moved for summary judgment on all of Ashley's claims, and Ashley cross-moved for summary judgment on his claims for false arrest and fabricated evidence. District Judge Nicholas Garaufis referred the motions to Magistrate Judge Steven Gold. Subsequently adopting Judge Gold's Report and Recommendation, the district court granted summary judgment to

11

Defendants-Appellees on all of Ashley's claims, with one exception: Ashley's claim for fabricated evidence survived, but only against Civil.

In due course, Ashley's fabricated-evidence claim was tried before a jury. At the close of the defense, Ashley moved for judgment as a matter of law. The motion was denied. Before instructing the jury, the court circulated a proposed jury charge, which stated, in relevant part:

> In order for you to find that Plaintiff's constitutional right to a fair trial was violated by the Defendant, Plaintiff must satisfy his burden of proof as to the following elements: (1) the defendant fabricated evidence that: (2) is likely to influence a jury's decisions; (3) provided that information to prosecutors; and (4) the plaintiff suffered a deprivation of liberty as a result.

Joint App'x at 484. The court then added:

> Paperwork errors, or a mere mistake, or mistakes, by a police officer in making a written record is not a basis for finding a constitutional violation but can be considered on the question of veracity.

Joint App'x at 485.

At the jury charge conference, Ashley's counsel objected to the court's instructions on fabrication. Ashley's counsel argued that, because Judge Garaufis had already determined at the summary judgment stage that Civil knew the First Complaint contained a false statement and had nonetheless signed and returned

it to ECAB, it was error to put to the jury the question of whether there had been a fabrication. Civil's counsel answered that Civil was entitled to his defense on the question of fabrication—specifically, whether the false statement in the First Complaint was, as the court's instructions put it, "a mere mistake" and thus not constitutionally actionable. The court agreed with Civil's counsel, explaining that, in considering the evidence in the light most favorable to Ashley as required at summary judgment, it had denied summary judgment to Civil because there remained triable issues of fact as to fabrication. The court stated:

> Why would I take this question of whether the error that was made by the prosecutor was the result of a fabrication, when . . . the jury is . . . going to hear from the defendant as to the reason why he did what he did. It's his right to have his defense on that subject.

Joint App'x at 610-11.

The court thereafter instructed the jury on all elements of the fabricated-evidence claim, along with the aforementioned instruction on "paperwork errors." The jury deliberated and found for Civil. Ashley's counsel renewed his motion for judgment as a matter of law, which the court again denied.

Ashley timely appealed the grant of summary judgment to Civil on the false-arrest and malicious-prosecution claims, along with the denial of his motion

13

for judgment as a matter of law on the fabricated-evidence claim. Additionally, in his appeal, Ashley alleged several errors in the district court's jury charge.

## DISCUSSION

For the reasons discussed below, we affirm the district court's grant of summary judgment to Civil on Ashley's claims for false arrest and malicious prosecution. We also affirm the district court's denial of Ashley's motion for judgment as a matter of law on his fabricated-evidence claim. The district court, however, erred in charging the jury that "[p]aperwork errors . . . [are] not a basis for finding a constitutional violation." Joint App'x at 955. This error resulted in prejudice to Ashley. Accordingly, we remand for a new trial.

**A. False Arrest and Malicious Prosecution**

We begin with Ashley's claims for false arrest and malicious prosecution. We review the district court's grant of summary judgment *de novo*, construing the facts in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor. The movant must show that there is no genuine

14

issue as to any material facts, and that they are entitled to judgment as a matter of law. *June v. Town of Westfield*, 370 F.3d 255, 257 (2d Cir. 2004).

Claims for false arrest brought under Section 1983 are "substantially the same" as claims for false arrest under state law. *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)) (internal quotation marks omitted). Under New York law, to prevail on a claim for false arrest, a plaintiff must show that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.*" Id*. at 134-35 (quoting *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)).

Probable cause to arrest is a complete defense to an action for false arrest. *Weyant*, 101 F.3d at 852. Officers have probable cause when they "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (quoting *Weyant*, 101 F.3d at 852). To assess probable cause, a court considers only the facts "available to the officer at the time of the

arrest and immediately before it." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)).

The district court held that Civil had probable cause to arrest Ashley because he "knew the room [in which the police found the drugs] was [Ashley's] room." Joint App'x at 378. Civil knew this, the district court concluded, because he was familiar with Ashley's room and his possessions, having been present during Ashley's arrests there a few months earlier, in late 2012. This conclusion was erroneous, however, because it required the district court to make an implicit credibility determination in Civil's favor, which the district court was not authorized to do on a motion for summary judgment brought by Civil.

The record before us supports contrary inferences about the credibility of Civil's claim that he believed Ashley owned the drugs because he was familiar with Ashley's room and possessions. In resolving Civil's summary judgment motion, the district court should have credited these inferences in favor of the non-movant Ashley.

First, the Complaint Room Screening Sheet created by the Early Case Assessment Bureau, which reflects a telephone conversation with Civil after the arrest, states that Civil "entered the [apartment], observed [Ashley and Jose

16

Carlos] and [Charles Patrick] in the apartment," and that "in the room where [Ashley and Carlos] were located, [Civil] recovered a bag containing 18 smaller Ziplock baggies containing approximately 2 ounces of marijuana." Joint App'x at 147. Civil contends that the Screening Sheet does not reflect the full account that he had relayed to ECAB. He subsequently adopted essentially this version of events, however, when he signed the First Complaint despite noticing that it claimed that Civil "observed [Ashley and Carlos] in possession of approximately two ounces of marihuana, in that [he] did recover said quantity of narcotics from the floor inside a room in which [Ashley and Carlos] were sitting." Joint App'x at 150.

Further, Civil's familiarity with Ashley's possessions appears nowhere in the record of Ashley's state prosecution. After surveillance images established that the First Complaint falsely claimed that Ashley was already at the apartment when the police arrived, the prosecution did not rely on Civil's alleged knowledge to re-plead the element of possession in the Second Complaint, despite allegedly already having this information. Instead, the Second Complaint alleged that Ashley entered the apartment and said "in sum and substance, see, this is what happens when you let strange people into our apartment." Joint App'x at 975.

Moreover, when the state court concluded that the Second Complaint was facially insufficient, the prosecution declined to supersede a second time, and it did not allude to any of the information Civil allegedly had already provided to the prosecution to make the claim that Ashley possessed the marijuana.

Based on this record, a jury could reasonably infer that the prosecution did not have the information Civil allegedly shared with them, which in turn casts serious doubt on Civil's claim that he knew the room in which the police found the drugs belonged to Ashley. To reach the conclusion that Civil had that knowledge, the district court necessarily made a credibility determination in Civil's favor. And this was error, because "credibility, in the ordinary course of things, is for a fact-finder to evaluate." *Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 174 (2d Cir. 2006); *see also Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.").

Nonetheless, we can affirm the district court's judgment on any other ground, and we think the summary judgment record before the district court was sufficient to establish probable cause without relying on Civil's familiarity with Ashley's possessions and hence on his credibility. Prior to the arrest, Civil stated

18

in an affidavit in support of his search warrant application that the police received a civilian complaint from a person who identified himself as Charles Patrick. The civilian complaint stated that "a tall, dark skinned, muscular Male Black with bald head [was living] in [Patrick's] apartment, refuse[d] to move out and [was] sell[ing] drugs out of the apartment . . . ." Joint App'x at 268. Although this tip alone might lack "sufficient indicia of reliability," it may nonetheless "support a finding of reasonable suspicion if sufficiently corroborated through independent police investigation." *United States v. Elmore*, 482 F.3d 172, 179 (2d Cir. 2007). At Civil's direction, an undercover agent twice succeeded in purchasing drugs from that location, thereby corroborating a material piece of information from the call. And although the drugs were purchased from Charles Patrick, who allegedly placed the call, we do not think this would have required a reasonable officer to ignore the additional information the caller provided.

The physical description in the civilian complaint is arguably overbroad, and we have said that "when [a] description could have applied to any number of persons and does not single out the person arrested, probable cause does not exist." *Jenkins*, 478 F.3d at 90. But we do not think that the description is a problem here, because the informant described someone who was "liv[ing] in the

apartment" and "refuse[d] to move out," Joint App'x at 268—therefore the description applied specifically to a roommate. Though we do not see anything in the summary judgment record indicating Ashley's height, the picture taken after his arrest shows an African American man with a shaved or bald head. And in the room where the police found the marijuana, they also found a picture of Ashley with a woman. Based on the physical description in the civilian complaint, a reasonable officer could conclude that the person in the picture was the roommate the informant described, and that the room in which the picture was found was his. By the time Ashley arrived at the apartment, the police had found marijuana in that room. In these circumstances, a reasonable officer could conclude that the drugs belonged to Ashley.

We hold that probable cause to arrest Ashley existed independently of the problems with Civil's testimony, and therefore affirm the district court's grant of summary judgment to Civil on Ashley's claim for false arrest. Further, although the "probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases," *Stansbury*, 721 F.3d at 95, we think the facts that supported probable cause to arrest here were sufficient to "lead a reasonably prudent person to believe the plaintiff guilty," as required for probable

cause to prosecute a claim. *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003). Because probable cause is a complete defense against a claim for malicious prosecution, *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003), we also affirm the district court's grant of summary judgment to Civil on Ashley's claim for malicious prosecution.

### B. Denial of the Right to a Fair Trial Based on Fabricated Evidence

We turn next to Ashley's fabricated-evidence claim. To establish this claim, a plaintiff must show that an investigative officer fabricated information likely to influence a jury and forwarded that information to the prosecution, causing the plaintiff to suffer a deprivation of liberty. The plaintiff need not have been tried to make out this claim so long as some deprivation of liberty occurred. *See Ricciuti*, 124 F.3d at 130.

After a trial on the fabricated-evidence claim, the jury deliberated and returned a verdict in Civil's favor. Ashley moved for judgment as a matter of law, which the district court denied. We affirm that denial. On appeal, Ashley also

argues that the jury charge contained several errors. We agree that the charge was erroneous, and we therefore vacate the jury verdict and remand for a new trial.[4]

### a. Motion for Judgment as a Matter of Law

We review the denial of a motion under Federal Rule of Civil Procedure 50 *de novo*. *S.E.C. v. Ginder*, 752 F.3d 569, 574 (2d Cir. 2014). We affirm the denial of this motion unless there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [it.]" *Id.* (quoting *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 567 (2d Cir. 2011). We consider the evidence in the light most favorable to the non-movant and give that party the benefit of all reasonable inferences that the jury might have drawn in their favor. *Id*.

To succeed on a fabricated-evidence claim, a plaintiff must establish that "an (1) investigating official (2) fabricate[d] information (3) that is likely to influence a

---

[4] We decline to consider Civil's additional argument, raised for the first time on appeal, that probable cause is a defense to Ashley's fabricated-evidence claim.

jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[red] a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016). The district court based its denial of Ashley's motion for judgment as a matter of law on the third and fifth elements of the claim—materiality and causation. It held that a reasonable jury could conclude that Ashley had not met his burden of proof with respect to either of these elements. Because we agree with the district court's conclusion regarding causation, we need not decide whether the evidence presented at trial permitted the jury to conclude that any false statement was not material.

We focus our analysis on the First Complaint. Government officials "may be held liable for fabricating evidence through false statements and omissions that are . . . made knowingly." *Morse v. Fusto*, 804 F.3d 538, 547 (2d Cir. 2015). Civil testified that he knew the First Complaint contained a false statement but that he nonetheless signed it and returned it to ECAB. Thus, he knowingly forwarded a false statement to the prosecution. Civil insists that a jury could infer that, because he testified that he did not himself originate or share with ECAB the false statement, Ashley has not proven that Civil sent fabricated information to the prosecution. But this is not a reasonable inference. Even if the jury believed that

23

Civil originally did share correct information with the prosecutors, the jury would not be entitled to ignore the fact that Civil later signed the First Complaint even though he knew that it contained a false statement ascribed to him. And Civil's claim that any fabrication was attributable only to the prosecution fails for the same reason. When he knowingly signed the First Complaint—which said that Civil "state[d]" that he saw Ashley in possession of the marijuana, Joint App'x 150—Civil adopted that statement as his own. We conclude that Ashley has established fabrication based on the First Complaint as a matter of law.

We hold, however, that the evidence at trial did not establish causation as a matter of law. The jury could have inferred from the fact that the prosecution did not drop the charges against Ashley after Civil's fabrication came to light, but instead filed the Second Complaint, that this fabrication did not cause Ashley's deprivation of liberty, *i.e.* his prosecution. Of course, the fact that the case was dismissed almost immediately thereafter might cast doubt on this inference. But considering the evidence in the light most favorable to Civil and granting him the benefit of all reasonable inferences, we cannot say, as a matter of law, that the fabrication caused the liberty-depriving judicial proceedings. Therefore, Ashley's motion for judgment as a matter of law was properly denied.

### b. Favorable Termination

Civil contends that under *McDonough v. Smith*, 139 S. Ct. 2149 (2019), plaintiffs asserting a fabricated-evidence claim must establish that the underlying prosecution terminated in their favor. He asserts that, because Ashley has not shown a favorable termination, any possible errors in the jury instructions were harmless. We hold, however, that Ashley's criminal case did terminate favorably to him.

Our favorable-termination analysis here relies on our precedents regarding favorable termination in the malicious-prosecution context. The Supreme Court explained in *McDonough* that fabricated-evidence claims might merit a "context-specific," and indeed "more capacious," understanding of what constitutes a favorable termination. 139 S. Ct. at 2160 n.10. But even assuming, *arguendo*, that the favorable termination requirement for fabricated-evidence claims is identical to that used for malicious prosecution claims, we believe that our malicious prosecution precedents compel the conclusion that Ashley's prosecution terminated in his favor.

In the malicious prosecution context, we have held that, to be deemed a favorable termination, the prosecution's "final disposition [must be] such as to

indicate the accused is not guilty." *Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir. 1980). This requirement is most easily met with a judgment of acquittal. But we have long recognized that a termination may be favorable when, although the termination is "not based on the merits, . . . the failure to proceed implies a lack of reasonable grounds for the prosecution." *Russo v. State of New York*, 672 F.2d 1014, 1019 (2d Cir. 1982) (internal quotation marks and alterations omitted) (quoting *Loeb v. Teitelbaum*, 77 A.D.2d 92, 101 (N.Y. App. Div. 2d Dep't 1980); *Halberstadt v. N.Y. Life Ins. Co.*, 194 N.Y. 1, 10-11 (1909)).

This principle, which we have repeatedly and consistently recognized,[5] is stated most clearly in *Murphy v. Lynn*, 118 F.3d 938 (2d Cir. 1997). There, we explained that whether a non-merits termination is "indicative of innocence depends on the nature and circumstances of the termination; the dispositive inquiry is whether the failure to proceed implies a lack of reasonable grounds for

---

[5] *See, e.g.*, *Conway v. Village of Mount Kisco*, 750 F.2d 205, 215 (2d Cir. 1984) ("[W]here [the final disposition] is not based on the merits, the dispositive inquiry—to be made factually—was found to be whether the failure to proceed implies a lack of reasonable grounds for the prosecution."); *Janetka v. Dabe*, 892 F.2d 187, 189 (2d Cir. 1989) ("When a termination is indecisive because it does not address the merits of the charge, the facts surrounding the termination must be examined to determine whether the failure to proceed implies a lack of reasonable grounds for the prosecution.") (quoting *Conway*, 750 F.2d at 215) (internal quotation marks and citation omitted); *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994).

the prosecution." *Id*. at 948 (internal quotation marks, alterations, and citations omitted); *cf. Conway*, 750 F.2d at 215 (concluding that, although the village court docket noted the termination was "not on the merits," the circumstances surrounding the termination gave rise to a question of fact over whether the prosecution actually terminated in the plaintiff's favor). And although we held in *Murphy* that, as a "general[]" matter, "certain types of dispositions"—such as dismissals for facial insufficiency in which the prosecution has "fail[ed] to allege sufficient facts to support the charge"—do not qualify as favorable terminations, we emphasized that the determination is context-specific. *See Murphy*, 118 F.3d at 948.

Here, the circumstances surrounding the termination of Ashley's prosecution show favorable termination, even though the disposition was denoted as a dismissal for facial insufficiency. The circumstances are not disputed. The First Complaint was dismissed after surveillance images showed Ashley arriving at the apartment building after the police. In April 2014, the prosecution filed the Second Complaint. On July 15, 2014, the court found that the Second Complaint was also facially insufficient, noting that "[j]ust because it is your home you cannot control what people bring into your home and obviously [the police] said they [saw]

somebody with the stuff and [Ashley came] in subsequently." Joint App'x at 287. The prosecution was then given the opportunity to supersede a second time and adduce further allegations to support the charges, but declined to do so. And on July 18, 2014, the court dismissed the Second Complaint, noting that unless the prosecution appealed the dismissal within thirty days, the case would be sealed. The prosecution did not appeal.

Significantly, at the latter hearing the court voiced severe criticism of the prosecution's case: "[I]f you have marijuana in your living room and . . . the police are already in the home [and] . . . I come in after the police[,] . . . I get charged for the marijuana you are standing by." Joint App'x at 158. The court went on to compare the case against Ashley to other cases where the mere presence of the defendant close to the marijuana was not enough to establish possession, noting that there were "a lot of these search warrant cases" that turned out to be groundless prosecutions. Joint App'x at 159.

In other words, the problem with the prosecution's case did not stem from a deficiency in the pleading, but rather from the court's sense that the prosecution's case without more simply did not support a charge of unlawful possession of marijuana against Ashley. Indeed, although the prosecution was

offered multiple opportunities to strengthen its case and supersede the deficient pleading, it declined to do so. *Cf. Murphy*, 118 F.3d at 948 (holding that dismissal for facial insufficiency tends not to indicate favorable termination where the prosecution remains able to institute a "renewed prosecution . . . on a facially sufficient pleading"). It follows that the prosecution's dismissal would "indicate [that Ashley is] not guilty." *Singleton*, 632 F.2d at 193.[6] As a result, we need not decide whether and how the favorable-termination standard for fabricated-evidence claims may be "more capacious" than the favorable-termination standard for malicious prosecution claims, *McDonough*, 139 S. Ct. at 2160 n.10,

---

[6] Of course, not every dismissal for facial insufficiency will satisfy the favorable termination requirement. *See MacFawn v. Kresler*, 214 A.D.2d 925, 926 (N.Y. App. Div. 3d Dep't 1995) ("Even looking beyond [the designation of facial insufficiency] and considering the actual basis for the decision, . . . plaintiff's supporting affidavits fail[ed] to allege any facts indicating the dismissal of the information was either a favorable termination or that the dismissal implied his innocence.") (internal citations, quotation marks, and alterations omitted), *aff'd*, 88 N.Y.2d 859 (1996).

We have explained that procedural dismissals might not satisfy the favorable termination requirement because they "may not end the state's pursuit of the accused on the same charges," *Murphy*, 118 F.3d at 949–50. But that rationale does not apply here because the statute of limitations period in which the government could bring these charges against Ashley has elapsed without any further attempt to charge him. *See* N.Y. Penal Law § 221.10 (McKinney 2018) (amended 2019) (defining criminal unlawful possession of marijuana in the fifth degree as a class B misdemeanor); N.Y. Penal Law § 221.15 (McKinney 2020) (defining criminal possession of marijuana in the fourth degree as a class A misdemeanor); N.Y. Crim. Proc. Law § 30.10(2)(c) (McKinney 2020) (requiring commencement of prosecution for misdemeanors within two years of their alleged commission).

because we hold that in the circumstances before us, Ashley's state criminal case terminated favorably to him even under our malicious prosecution precedents.

### c. Jury Instructions

We therefore must consider Ashley's contention that the district court erred in its charge to the jury.

Where the challenging party failed to object to the charge at trial, we review the jury instructions for plain error, and will grant a new trial only where the charge "contravene[s] an established rule of law . . . and go[es] to the very essence of the case." *Rasanen v. Doe*, 723 F.3d 325, 333 (2d Cir. 2013). On the other hand, where the challenging party objects to the charge at trial, we review the instruction *de novo*. An instruction is erroneous if it misleads the jury as to the correct legal standard or does not "adequately inform the jury of the law." *Hudson v. New York City*, 271 F.3d 62, 67 (2d Cir. 2001) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 552 (2d Cir. 1996)). We reverse only if, "based on a review of the record as a whole, . . . the error was prejudicial or the charge was highly confusing." *Id*. at 68 (quoting *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1345 (2d Cir. 1994)).

Ashley argues that the district court erred in three regards: (1) it allowed the jury to consider whether there was fabrication and whether such fabrication was

forwarded to the prosecution, even though the court had held—as a matter of law—that Ashley had established those elements of the claim; (2) it instructed the jury that "paperwork errors" or "mere mistakes" by a police officer do not amount to fabrication; and (3) its instructions on materiality were "so incomplete that they [misled] the jury as to the correct law." Appellant's Br. at 47.

To begin with the third and simplest issue, we assess the materiality instruction under plain error because Ashley did not raise this challenge before the trial court. The district court instructed the jury that, to establish materiality, Ashley needed to show that the fabrication was "likely to influence a jury's decision." Joint App'x at 954. This instruction appears to adhere with how this Court has in the past articulated the materiality standard, *see, e.g.*, *Garnett*, 838 F.3d at 279, and therefore the instruction was not plainly erroneous.

We review *de novo* the other two instructions that Ashley claims were erroneous. Ashley expressly objected to the district court's inclusion of an instruction on fabrication. Although Ashley did not object to the "paperwork error" language specifically, we are satisfied, after reviewing the record, that his objection to the fabrication instruction sufficiently called the court's attention to the problem. As we have held, "no particular formality is required of the objection

31

so long as it is clear that the trial judge was informed of possible errors in the charge and was given an opportunity to correct them." *Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.*, 290 F.3d 98, 112 (2d Cir. 2002) (quoting *Fogarty v. Near N. Ins. Brokerage, Inc.*, 162 F.3d 74, 79 (2d Cir. 1998)). When Ashley objected to the element of fabrication being put to the jury, both Civil's counsel and the court understood that this objection also implicated the court's instructions regarding paperwork errors. Indeed, in response to Ashley's objection, the court stated:

> Why would I take this question of whether the error that was made by the prosecutor was the result of a fabrication, when they're going to hear from the defendant, when the jury is . . . going to hear from the defendant as to the reason why he did what he did. It's [Civil's] right to have his defense on that subject.

Joint App'x at 610-11. We conclude that the district court was made sufficiently aware of possible errors to preserve Ashley's challenge to these two instructions in full.

Ashley contends that the jury instruction on fabrication was erroneous because, at summary judgment, the district court had concluded that Ashley had established fabrication with regard to the First Complaint. We take him to be arguing that, in not expressly distinguishing between the allegations concerning the First and Second Complaints, the general instruction on fabrication misled the

32

jury and permitted it, improperly, to find no fabrication with respect to the First Complaint.[7] We need not, however, decide the point because we agree with Ashley that a remand for a new trial is necessary as a result of the other instructional error that he raises.

The district court erred in charging the jury that "[p]aperwork errors, or mere mistake, or mistakes, by a police officer in making a written record is not a basis for finding a constitutional violation." Joint App'x at 955. This instruction was severely misleading.

The fabrication element requires only that the defendant knowingly make a false statement or omission. *Morse*, 804 F.3d at 547. The testimony at trial established as a matter of law that Civil did just that when he signed the First Complaint knowing that it contained a false statement. Civil, however, testified that he thought the statement was a "slight discrepancy." Joint App'x at 784. This testimony, taken together with the court's instruction, could have led the jury

---

[7] It would have been proper for the jury to consider whether Civil had fabricated evidence and whether he had forwarded that evidence to the prosecutor with respect to the Second Complaint. As to that complaint, the issue of whether there was a fabrication is not settled. It turns on the origin of the phrase "this is what happens when you let strange people into our apartment," Joint App'x at 975, and whether Ashley did in fact say those words—questions that are disputed.

mistakenly to believe that fabrication turns in part on the severity of the error rather than simply on the knowing falsity of the statement. Indeed, this is precisely what Civil's counsel argued at summation: "Plaintiff wants you to believe that just because there was a mistake in the paperwork, his constitutional rights were violated, but that's not true." Joint App'x at 926. With respect to the First Complaint, the jury therefore may have mistakenly concluded that the false statement was a non-actionable "paperwork error" even though, as we have explained, the fabrication element requires only a knowing falsity. As to the Second Complaint, we agree that whether the disputed statement it included was a fabrication was a jury question. Nevertheless, the "paperwork error" instruction was erroneous with respect to this complaint as well.

There therefore was error. And it was clearly prejudicial, for we cannot say "whether a correctly charged jury would have rendered a different verdict." *Hudson*, 271 F.3d at 71. Accordingly, we vacate the judgment and remand for a new trial.

## CONCLUSION

We AFFIRM the district court's grant of summary judgment on Ashley's claims for false arrest and malicious prosecution. On Ashley's fabricated-evidence

claim, we AFFIRM the district court's denial of judgment as a matter of law, but

VACATE the judgment in favor of Civil, and REMAND for a new trial.