KLS Diversified Master Fund, L.P. v. McDevitt

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of July, two thousand twenty-two.

PRESENT:
> MICHAEL H. PARK,
> STEVEN J. MENASHI,
> MYRNA PÉREZ,
> *Circuit Judges.*

_____

KLS DIVERSIFIED MASTER FUND, L.P.,

*Plaintiff-Appellee*,

v.                                                    21-1263

SEAN MCDEVITT,

*Defendant-Appellant.*

_____

FOR DEFENDANT-APPELLANT:     CHRISTOPHER J. SEUSING (Michelle M. Arbitrio, Sameer P. Ponkshe, *on the brief*), Wood Smith Henning & Berman LLP, White Plains, NY.

FOR PLAINTIFF-APPELLEE:     EUGENE R. LICKER (Marjorie Peerce, *on the brief*), Ballard Spahr LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Liman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant Sean McDevitt was the CEO of Sensei, Inc. ("Sensei"), which operated a healthcare-related "digital engagement platform" and "mobile application."  Short on cash, Sensei entered into an agreement (the "Transaction") on January 9, 2017 with Plaintiff KLS Diversified Master Fund, L.P. ("KLS") whereby KLS paid Sensei $2 million in exchange for a $3.33 million convertible promissory note, with a 4% annual coupon and a maturity date of two years from the date of execution.

Three documents governed the terms of the Transaction.  First, the Note Purchase Agreement provided that KLS would purchase the promissory note from Sensei for $2 million, and Sensei made certain representations and warranties to KLS.  Second, the Secured Convertible Promissory Note ("Note") provided that Sensei would pay the $3.33 million value of the Note plus coupon after two years and that Sensei covenanted to: (1) make to KLS "[a] prompt report of any legal actions pending or threatened in writing against the Company" and (2) "[t]imely file all required tax returns and reports and timely pay all foreign, federal, state, and local taxes."  App'x at 79.  Third, McDevitt also signed a Conditional Guaranty, in which he agreed to be "fully and personally liable for the payment and performance of any then remaining obligations of [Sensei] set forth in the Note . . . only in the event" that a "Recourse Event" occurs.  App'x at 150.  The recourse events relevant to this appeal are: (1) "any intentional or willful failure to disclose a material fact in connection with the issuance of the Note or at any time the Note is outstanding"

("Recourse Event A"); and (2) "any material breach of the material terms of the Note . . . directly or indirectly caused by [McDevitt]" ("Recourse Event C"). App'x at 150–51.

Sensei failed to pay the $3.33 million principal and accrued interest owed to KLS at the two-year maturity date. KLS thus foreclosed on Sensei's assets and obtained title to them. KLS then sued McDevitt for a breach of guaranty claim alleging that he was liable for Sensei's obligations under the Note because he triggered various recourse events in the Conditional Guaranty. The district court granted KLS's motion for summary judgment as to McDevitt's liability, finding that: (1) McDevitt triggered Recourse Event A by failing to disclose a litigation threat by Porter Wright Morris & Arthur ("Porter Wright"); and (2) McDevitt triggered Recourse Event C by failing to disclose pending litigation against Sensei by Porter Wright and Jonathan Schwartz, and failing to timely file and pay federal and state taxes. The district court granted in part and denied in part KLS's motion for summary judgment as to damages, finding that: (1) KLS could recover the full amount due under the Note from McDevitt without offsetting the value of the collateral in KLS's possession; (2) McDevitt's claim that the Transaction was unconscionable was waived and failed on the merits; and (3) KLS's request for attorneys' fees of 30% of the amount recovered was reasonable.[1] McDevitt appealed. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"We review the district court's grant of summary judgment *de novo*, construing the facts in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021). We also review the court's interpretation of the Transaction documents de novo. *See Compagnie Financiere de CIC et de*

---

[1] The only part of KLS's motion for summary judgment that the court denied was its request for "fees on fees" or "payment of fees in connection with the collection of attorney's fees." Special App'x at 116–17.

3

*L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 188 F.3d 31, 34 (2d Cir. 1999).

## I.      Recourse Events

Any one Recourse Event is sufficient to establish McDevitt's liability and therefore to affirm the judgment of the district court.[2] We affirm the district court's grant of summary judgment on the basis that Sensei's failure to file and pay taxes on time triggered Recourse Event C, which requires "a material breach of the material terms of the Note . . . directly or indirectly caused by [McDevitt]." App'x at 150–51.[3] Recourse Event C provides an inexhaustive list of terms that are "material," each of which protected KLS's investment in Sensei. The Note's affirmative covenant that Sensei file and pay taxes on time is a material term because, like those terms listed in Recourse Event C, the failure to timely pay taxes can result in penalties, including liens, which affect KLS's investment.

Sensei's failure to file and pay federal and state taxes on time was also a material breach. Sensei failed to file federal taxes for the first and second quarters of 2018, resulting in about $5,500 in late fees and penalties, and it also owed about $44,000 in federal taxes and $4,250 in state taxes halfway through 2018.[4] These liabilities were significant in and of themselves for a cash-strapped company, but they were even more significant as indicia of Sensei's problems in light of the hundreds of thousands of dollars of back taxes Sensei owed because of its failure to file and pay

---

[2] *See* App'x at 150 ("[I]n the event *any* of the following occurs," "Guarantor shall be fully and personally liable for the payment and performance of any then remaining obligations of Company set forth in the Note." (emphasis added)); App'x at 151 ("Upon the occurrence of *a* Recourse Event, Guarantor shall pay the Guaranteed Obligations in full in cash upon demand by Holder." (emphasis added)).

[3] Because we hold that the breach of the tax covenant triggered Recourse Event C, we need not decide whether the district court properly concluded that McDevitt triggered Recourse Events A and C by failing to disclose the Porter Wright and Schwartz litigations.

[4] McDevitt was replaced as CEO in May 2018.

taxes before the Transaction. KLS ultimately advanced $570,000 in credit so Sensei could pay off its tax liabilities.

McDevitt argues that the tax-related breach was not material because he paid off the state tax liabilities. Even so, Sensei was still liable for the unpaid federal taxes and penalties. McDevitt also argues that because his tax advisor instructed him not to file federal taxes in order to pursue an Offer in Compromise with the IRS, that there was no breach, and even if there was a breach, it was not caused by him. The Note, however, does not provide any exception to the taxes covenant. And McDevitt cannot avoid responsibility by blaming his tax advisor—the tax advisor testified that he did not know about the KLS financing, much less the covenants in the Note, and whatever the tax advisor's advice, McDevitt had ultimate control over whether and when taxes were filed.

In sum, we affirm the district court's grant of summary judgment to KLS because McDevitt triggered Recourse Event C and is therefore liable to KLS under the Conditional Guaranty.

**II.     Unconscionability**

The district court found that (1) McDevitt forfeited his unconscionability defense because he failed to raise the argument at the liability stage of summary judgment and instead raised it at the damages stage, and (2) McDevitt contractually waived the argument when he agreed to a broad waiver of defenses in the Conditional Guaranty, which included waiving "any legal or statutory provision or legal or equitable principle of law which would discharge [McDevitt's] obligations for the Guaranteed Obligations."[5]  App'x at 152–54.  McDevitt did not challenge the district court's finding that he contractually waived the unconscionability defense, and he thus abandoned

---

[5] McDevitt also waived his argument that the value of the collateral that KLS currently possesses should offset the judgment against him. McDevitt devotes only two sentences to this argument in his briefs and fails to provide any factual or legal analysis. The issue is thus "not sufficiently argued in the briefs," and we decline to consider it. *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998).

the issue on appeal.

In any event, McDevitt's unconscionability argument fails on the merits. "The doctrine of unconscionability seeks to prevent sophisticated parties with grossly unequal bargaining power from taking advantage of less sophisticated parties." *NML Capital v. Republic of Argentina*, 621 F.3d 230, 237 (2d Cir. 2010) (citation omitted). "In general, a provision will be deemed unenforceable on unconscionability grounds only where it is both procedurally and substantively unconscionable when made. . . . [T]here are some exceptional cases where a provision of a contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." *Id.* (cleaned up).

Here, there was no procedural unconscionability. Even though Sensei was running low on cash and had limited financing options, both parties in the transaction were sophisticated commercial entities represented by counsel who negotiated at arm's length. *See NML Capital*, 621 F.3d at 237; *Westinghouse Elec. Corp. v. N.Y.C. Transit Auth.*, 623 N.E.2d 531, 535 (N.Y. 1993). The contract was not "so outrageous" that it would be unenforceable on substantive unconscionability alone. *NML Capital*, 621 F.3d at 237 (citation omitted). Although many of the terms of the Transaction were highly favorable to KLS, they were not unreasonable given the large risk KLS took lending to Sensei.[6] *See Westinghouse Elec. Corp.*, 623 N.E.2d at 535 ("The bedrock of the doctrine of unconscionability is the prevention of oppression and unfair surprise . . . and not of disturbance of allocation of risk." (cleaned up)).

We have considered the remainder of McDevitt's arguments and find them to be without

---

[6] McDevitt argues on appeal that the Transaction is substantively unconscionable because it violates New York's criminal usury laws. McDevitt forfeited this argument because he raised it for the first time on appeal, and we decline to consider it. *See Harrison v. Republic of Sudan*, 838 F.3d 86, 96 (2d Cir. 2016) ("It is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." (cleaned up)).

merit.[7]  Accordingly, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[7] We reject McDevitt's argument that the court abused its discretion in its award of attorneys' fees.  McDevitt contends that the fee award was unreasonable because the number of hours KLS's counsel billed was inflated.  The court did not abuse its discretion in finding that the number of hours billed was justified given the complexity of the case and efforts required by counsel.  And in any event, the 30% contingency fee that the court awarded was lower than the fee for the actual time billed.