*SEC v. Halitron, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of March, two thousand twenty-five.

Present:
> MICHAEL H. PARK,
> MYRNA PÉREZ,
> ALISON J. NATHAN,
> *Circuit Judges.*

---

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

> *Plaintiff-Appellee,*

v.                                                                      24-1052

HALITRON, INC., BERNARD FINDLEY,

> *Defendants-Appellants.*

---

| | |
|---|---|
| FOR PLAINTIFF-APPELLEE: | WILLIAM K. SHIREY, Counsel to the Solicitor, *for* Michael A. Conley, Solicitor, Securities and Exchange Commission, Washington, D.C. |
| FOR DEFENDANTS-APPELLANTS: | JOSEPH M. PASTORE III, Leanne M. Shofi, Pastore LLC, Stamford, CT. |

Appeal from a judgment of the United States District Court for the District of Connecticut (Underhill, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

After a five-day trial in January 2023, a jury found Defendants Bernard Findley and Halitron, Inc. liable for violating Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a); Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b); and SEC Rule 10b-5(b), 17 C.F.R. § 240.10b-5.  On February 21, 2024, the district court issued a permanent injunction restraining Defendants from violating Section 17(a) of the Securities Act and Section 10(b) of the Securities Exchange Act and imposed a four-year bar on Findley acting as an officer or director of a public company or participating in the offering of a penny stock.   In addition, the district court ordered Defendants to disgorge $223,000 and imposed a civil penalty against Findley in the amount of $250,000.

On appeal, Defendants argue that the district court erred in denying their motion for judgment as a matter of law and that the jury's verdict should be overturned for insufficient evidence.  Defendants also argue that the district court erred in ordering disgorgement, a civil penalty, and injunctive relief.  We assume the parties' familiarity with the underlying facts, procedural history of the case, and issues on appeal.

## I.     Rule 50 and Sufficiency of the Evidence

Defendants argue that their Rule 50 motion for judgment as a matter of law should have been granted because "no reasonable jury would have had a legally sufficient evidentiary basis to

find for the SEC." Appellants' Br. at 43. Similarly, they argue that the jury verdict should be overturned because there was "no evidence of materiality or scienter," and the SEC "bas[ed] its case on forward-looking opinions and/or corporate optimism." *Id.*

"We review the denial of a Rule 50 motion *de novo*." *SEC v. Ginder*, 752 F.3d 569, 574 (2d Cir. 2014). "We affirm the denial of this motion unless there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." *Ashley v. City of New York*, 992 F.3d 128, 138-39 (2d Cir. 2021) (cleaned up). In addition, "[w]e consider the evidence in the light most favorable to the non-movant and give that party the benefit of all reasonable inferences that the jury might have drawn in their favor." *Id.* at 139.

A person violates Section 10(b) of the Exchange Act and Rule 10b-5 by making a "material misrepresentation or a material omission" with scienter "in connection with the purchase or sale of securities." *SEC v. Frohling*, 851 F.3d 132, 136 (2d Cir. 2016) (internal quotation marks omitted). Section 17(a)(2) "prohibits any person from obtaining money or property 'by means of any untrue statement of a material fact or any omission to state a material fact.'" *Aaron v. SEC*, 446 U.S. 680, 696 (1980) (quoting 15 U.S.C. §§ 77q(a)(2)). The SEC "need not establish scienter as an element of an action to enjoin violations of § 17(a)(2)." *Id.* at 702.

A false or misleading statement is material if there is a "substantial likelihood that a reasonable investor would find the omission or misrepresentation important in making an investment decision." *United States v. Vilar*, 729 F.3d 62, 89 (2d Cir. 2013). "A finding of materiality does not require proof of actual reliance." *United States v. Litvak*, 889 F.3d 56, 65

3

(2d Cir. 2018) (internal quotation marks omitted). Scienter is the "intent to deceive, manipulate, or defraud." *SEC v. Obus*, 693 F.3d 276, 286 (2d Cir. 2012) (internal quotation marks omitted). It "may be established through a showing of reckless disregard for the truth, that is, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care." *Id.*

Sufficient evidence supports the jury's finding that Defendants made at least one false or materially misleading statement with scienter. At trial, the SEC presented thirteen statements— seven press releases describing the audit and six press releases describing the stock buyback program—that a jury could reasonably find were false or misleading. For example, one press release issued on July 18, 2017, stated that "[m]anagement anticipate[d] completing the audit shortly." App'x at 1235. Another press release issued on July 24, 2017, represented that the audit was "almost complete." *Id.* at 1238. But in reality, Findley was "very concerned about the timing of the project," *id.* at 403, and wrote in an email on July 7, 2017—just weeks before these two statements—that the audit had "no end in sight," *id.* at 1314. The anticipated completion of the audit was material to investors because it would have provided an independent assessment of Halitron's financials and, as Halitron's press releases explained, it was a prerequisite for Halitron to uplist its stock to a more desirable market. Findley admitted at trial that he received at least 30 emails from investors about the audit.

Defendants argue that the language in their press releases was "forward-looking" and "optimistic," and the "statements [were] accompanied by cautionary language." Appellants' Br. at 10-11. But those arguments fail. The press releases included false and misleading statements of fact. *See, e.g.*, App'x at 1233 (noting that Halitron was "still on the path to" completing the

4

uplist by mid-year); *id.* at 1238 (stating that "the auditing process [was] almost complete"). And the generic cautionary language at the end of the press releases—*i.e.*, the "Safe Harbor Statement"—cannot disclaim the false and misleading nature of those representations. *See P. Stolz Fam. P'ship L.P. v. Daum*, 355 F.3d 92, 97 (2d Cir. 2004) (explaining that "historical facts" "exist and are known," and one may not "disclaim those misrepresented facts with cautionary language").[1] The district court thus did not err in denying Defendants' motion for judgment as a matter of law.

## II.      Remedies for Defendants' Fraud

Defendants argue that the district court erred in ordering disgorgement, civil penalties, and injunctive relief. We disagree. "[O]nce the district court has found federal securities law violations, it has broad equitable power to fashion appropriate remedies, . . . and its choice of remedies is reviewable for abuse of discretion." *SEC v. Fowler*, 6 F.4th 255, 265 (2d Cir. 2021) (quoting *SEC v. Sourlis*, 851 F.3d 139, 146 (2d Cir. 2016)). "Where the award of equitable relief is supported by findings of fact, such findings are reviewed for clear error." *Osberg v. Foot Locker, Inc.*, 862 F.3d 198, 206 (2d Cir. 2017).

---

[1] Alternatively, Defendants contend that the verdict should be overturned because "[t]he jury was likely confused" "by the SEC's dropping its scheme liability allegations at the end of trial without instructing the jury about that important fact." Appellants' Br. at 43. We decline to consider this argument because Defendants waived their right to appeal the issue. At the charge conference, the district court "strong[ly]" encouraged the SEC to withdraw its scheme-liability claims. App'x at 1060. The SEC agreed to do so but requested that defense counsel not address the withdrawal during closing arguments. Defense counsel stated that he agreed and did not intend to address the withdrawal. Furthermore, he did not request any jury instructions concerning the withdrawn claims and agreed that the district court's proposed jury instructions were satisfactory. Even assuming that Defendants' argument was forfeited and not waived, they have failed to show how the omission of such an instruction constituted a "plain error" that "affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 733 (1993).

First, Defendants argue that the district court abused its discretion by "ordering disgorgement based on amounts loaned by financiers." Appellants' Br. at 49 (emphasis removed). But a court may order disgorgement of "profits causally related to the fraud." *SEC v. Razmilovic*, 738 F.3d 14, 31 (2d Cir. 2013). Here, the district court considered the "causal connection between the financing transactions and the defendants' wrongful conduct" and explained how "the debt financing funds received by the defendants during the relevant time period were causally connected to [their] fraudulent statements." *SEC v. Findley*, 718 F. Supp. 3d 125, 140 (D. Conn. 2024). More broadly, the district court properly concluded that an award of disgorgement was consistent "with the equitable nature of that remedy," *id.* at 139, as described in *Liu v. SEC*, 591 U.S. 71 (2020). *See id.* ("Investors who purchased Halitron stock during the time period in which the defendants were making false statements suffered estimated trading losses of at least $1,688,548.").[2]

Second, the district court reasonably concluded that the record demonstrated "a substantial likelihood of future violations of illegal securities conduct" warranting the permanent injunction. *SEC v. Cavanaugh*, 155 F.3d 129, 135 (2d Cir. 1998). Defendants argue that the district court failed to consider that "branding Appellants with a permanent scarlet letter . . . all but ensures financial ruin." Appellants' Br. at 52 (cleaned up). But the district court explicitly recognized "the stigma that an injunction places on the defendants in the industry." *Findley*, 718 F. Supp.

---

[2] Defendants also argue that the district court improperly made post-trial factual findings to support its disgorgement order. But defense counsel agreed that the court had "wide discretion" to make "findings of fact in aid of the remedies order." App'x at 1514. Accordingly, Defendants have waived this argument on appeal. *See Olano*, 507 U.S. at 733; *United States v. Polouizzi*, 564 F.3d 142, 153 (2d Cir. 2009).

6

3d at 143.   Nonetheless, it found that nearly all of the *Cavanaugh* factors "point[ed] clearly in favor of a permanent injunction" and that such an injunction would serve an important public interest.   *Id.*   Defendants similarly argue that the four-year industry bar imposed by the district court "is inappropriate for a first-time offender."   Appellants' Br. at 53 (internal quotation marks omitted).   But again, the district court weighed all of the relevant factors, including "Findley's role with the company when he engaged in fraud, his degree of scienter, his economic stake in the violation, and the likelihood of recurrence," as well as his status as a first-time offender.   *Findley*, 718 F. Supp. 3d at 144.   In doing so, the district court reasonably "conclude[d] that temporary, rather than permanent, industry bars are appropriate."   *Id.*; *see also SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995).   That determination was well within the court's discretion.

Third, Defendants' reliance on the Supreme Court's recent decision in *SEC v. Jarkesy*, 603 U.S. 109 (2024), is misplaced.   They argue that, under *Jarkesy*, the task of determining a civil penalty was one for the jury, not the court.   But *Jarkesy* addressed a different Seventh Amendment question—whether the SEC may adjudicate certain matters "in-house" before an administrative law judge "rather than before a jury in federal court."   603 U.S. at 115.   It did not abrogate *Tull v. United States*, 481 U.S. 412, 427 (1987), which held that, consistent with the Seventh Amendment, "the trial court and not the jury should determine the amount of [any civil] penalty."   There is thus no merit to Defendants' argument that the district court violated their Seventh Amendment rights.

\* \* \*

7

We have considered the remainder of Defendants' arguments and find them to be without merit.   For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court