■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NOEL HASSLINGER, Appellant. [771 NYS2d 589]—

Carpinello, J. Appeal from a judgment of the County Court of Schenectady County (Hoye, J.), rendered December 20, 2002, upon a verdict convicting defendant of the crimes of conspiracy in the fourth degree, grand larceny in the second degree (four counts), securities fraud and money laundering in the second degree (four counts).

Defendant was charged in a multicount indictment with various crimes stemming from his role in stealing over $1 million from an elderly woman suffering from dementia and Alzheimer's disease. In short, defendant and John May, aware of the victim's diminished mental capacity and hefty financial portfolio, masterminded a plan which began with charging her exorbitant fees for unnecessary home repairs and evolved to fraudulently obtaining a power of attorney thus giving them free reign over all her financial affairs. In the end, defendant and May, in a 2$\frac{1}{2}$-year period, liquidated all of the victim's bank accounts, stocks and bonds, as well as established a check cashing scheme to cover their trail.

Defendant was found guilty by a jury of conspiracy in the fourth degree, four counts each of grand larceny in the second degree and money laundering in the second degree, and securities fraud in violation of General Business Law § 352-c (6). He was thereafter sentenced to concurrent prison terms aggregating 5 to 15 years and ordered to pay restitution in the amount of $930,000. Of the issues raised on appeal, only one has merit, namely, defendant's contention that the facts of this case do not constitute a violation of General Business Law § 352-c (6).

A brief overview of General Business Law article 23-A (hereinafter the Martin Act) is required. The Martin Act "provides the regulatory framework governing the offer and sale of securities, commodities and other investment vehicles in and from New York" (Mihaly and Kaufmann, Practice Commentary, McKinney's Cons Laws of NY, Book 19, General Business Law art 23-A, at 10; *see People v Landes*, 84 NY2d 655, 660 [1994]; *CPC Intl. v McKesson Corp.*, 70 NY2d 268, 277 [1987]). Remedial in nature, it was enacted "to prevent all kinds of fraud in connection with the sale of securities and commodities and to defeat all unsubstantial and visionary schemes in relation thereto whereby the public is fraudulently exploited" (*People v Federated Radio Corp.*, 244 NY 33, 38 [1926]; *accord People v Lexington Sixty-First Assoc.*, 38 NY2d 588, 595 [1976]; *Dunham v Ottinger*, 243 NY 423, 431 [1926]). Said differently, the Martin Act "seek[s] to regulate parties selling securities and to advance the public's knowledge about the securities offered for sale" (*People v Landes, supra* at 660). To be sure, the terms fraud and fraudulent practices under the Martin Act are "to be given a wide meaning so as to embrace all deceitful practices contrary to the plain rules of common honesty, including all acts, even though not originating in any actual evil design to perpetuate fraud or injury upon others, which do tend to deceive or mislead the purchasing public" (*People v Lexington Sixty-First Assoc., supra* at 595; *see People v Sala*, 258 AD2d 182, 193 [1999]).

In 1982, the Martin Act was amended (*see* L 1982, ch 146, § 3) to provide a higher criminal penalty for anyone who intentionally engages in fraudulent conduct "in securities transactions" (Sponsor's Mem, Bill Jacket, L 1982, ch 146) thus "fill[ing] an apparent void in the Penal [L]aw and help[ing] to protect the investing public" (Attorney General Mem in Support, Bill Jacket, L 1982, ch 146). It was pursuant to this amendment that General Business Law § 352-c (5) and (6) were add-

ed.* Notably, the amendment was specifically aimed at "unscrupulous promoters" who willfully engage in fraudulent securities practices in violation of the Martin Act, reap large sums of money and face no felony indictment (Sponsor's Mem, Bill Jacket, L 1982, ch 146). The types of unscrupulous transactions targeted by the amendment included deliberate and willful misrepresentations by sponsors of cooperative and condominium conversions (*see id.*), willful failures to register offerings for the sale of real estate securities (*see id.*), as well as "boiler rooms, ponzi schemes, insider trading, pyramid schemes, fictitious transactions and other artifices to defraud the investing public" (Attorney General Mem in Support, Bill Jacket, L 1982, ch 146).

Here, even though the conduct of defendant and May was unquestionably fraudulent and even though such conduct resulted in the sale of shares of stock, the proceeds of which they stole, their conduct simply did not constitute a violation of the Martin Act as neither was engaged in a securities transaction with an intent to deceive or defraud the investing public (*compare People v Napolitano*, 282 AD2d 49 [2001], *lv denied* 96 NY2d 866 [2001]; *People v Sala, supra*; *People v Thomas*, 134 Misc 2d 649 [1986]; *see generally People v Abbott*, 4 Misc 2d 565, 566 [1955]; *Jones Mem. Trust v Tsai Inv Servs.*, 367 F Supp 491, 498 [1973]). In sum, defendant and May were not remotely connected with the business of buying or selling securities (*see People v Abbott, supra*) and did not target or exploit an unwitting public in their scheme to rob the victim. Thus, although the charged conduct might fall within a literal reading of the statute's broad language, the true intent of the Legislature in enacting and amending the Martin Act quite clearly shows that General Business Law § 352-c (6) was not intended to apply to the facts in this case. To this end, we note that "it is generally the rule that the literal meaning of the words used [in a statute] must yield when necessary to give effect to the intention of the Legislature" (McKinney's Cons Laws of NY, Book 1, Statutes § 111, at 225) and that "[t]he letter of a statute is not to be slavishly followed when it leads away from the true intent and purpose of the Legislature" (McKinney's Cons Laws of NY,

---

* General Business Law § 352-c (6) provides in relevant part: "Any person . . . who intentionally engages in fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale, or who makes any material false representation or statement with intent to deceive or defraud, while engaged in inducing or promoting the issuance, distribution, exchange, sale, negotiation, or purchase within or from this state of any securities or commodities . . . and thereby wrongfully obtains property of a value in excess of [$250] shall be guilty of a class E felony."

Book 1, Statutes § 111, at 226-227; *see e.g. Matter of Pirro v Angiolillo*, 89 NY2d 351, 357 [1996]). Thus, here, even though defendant and May may have literally "induced" a sale of stock through fraudulent and deceptive means, departure from a literal construction of the statute is warranted to give way to the primary objective of the Legislature under the Martin Act. As a result, only defendant's conviction for violating General Business Law § 352-c (6) must be reversed.

Defendant's remaining contentions have been reviewed and found to be without merit.

Cardona, P.J., Mercure, Peters and Spain, JJ., concur. Ordered that the judgment is modified, on the law and the facts, by reversing defendant's conviction of violating General Business Law § 352-c (6); said count dismissed and matter remitted to the County Court of Schenectady County for further proceedings pursuant to CPL 460.50 (5); and, as so modified, affirmed.