*Barnes v. City of New York*

# In the
# United States Court of Appeals
## For the Second Circuit

---

August Term, 2021

No. 21-33

TOMMY BARNES,

*Plaintiff-Appellant*,

v.

CITY OF NEW YORK,
SERGEANT KENNETH CAESAR, SHIELD NO. 2940,
OFFICER MICHAEL MANETTA, SHIELD NO. 241,
OFFICER NICHOLAS MAUCELI, SHIELD NO. 9894,

*Defendants-Appellees*.

---

Appeal from the United States District Court
for the Southern District of New York
No. 18-cv-7119
(Submitted January 21, 2022; Decided May 22, 2023)

Before:     WALKER, SULLIVAN, and LEE, *Circuit Judges*.

Plaintiff-Appellant Tommy Barnes, proceeding *pro se*, brings this action against several police officers and the City of New York asserting various claims under 42 U.S.C. § 1983 and New York state law based on his allegation that police officers falsely claimed that they observed him selling drugs. At the conclusion of his criminal trial, Barnes was acquitted of a drug sale charge and convicted of a drug possession charge. Barnes subsequently filed this civil action, and the district court dismissed all of Barnes's claims.

We agree with the district court's dismissal of all of the federal claims except for the dismissal of Barnes's due process claim based on the use of fabricated evidence regarding the drug sale charge of which he was acquitted. Specifically, the district court erred in concluding that because Barnes was arrested, detained, prosecuted, and convicted for drug possession simultaneous to the drug sale proceedings, this precludes, as a matter of law, his ability to plead a deprivation of liberty caused by the drug sale prosecution. Because the prosecution of an individual based on fabricated evidence may itself constitute a deprivation of liberty, even in the absence of custody or a conviction, Barnes was not required to show that his drug sale prosecution resulted in additional custody or a conviction in order to sufficiently allege a claim at the pleading stage.

We therefore **AFFIRM IN PART** and **VACATE IN PART** the district court's dismissal of Barnes's claims and **REMAND** for proceedings consistent with this Opinion.

Judge Sullivan dissents in a separate opinion.

_____

Tommy Barnes, *pro se*, Comstock, NY, *for Plaintiff-Appellant*.

Scott Shorr and Jesse A. Townsend, *for* Georgia M. Pestana, Corporation Counsel of the City of New York, New York, NY, *for Defendants-Appellees*.

_____

2

EUNICE C. LEE, *Circuit Judge*:

Plaintiff-Appellant Tommy Barnes, proceeding *pro se*, brings this action against several police officers and the City of New York asserting various claims under 42 U.S.C. § 1983 and New York state law based on his allegation that police officers falsely claimed that they observed him selling drugs. Following his arrest by the officers, which resulted in the seizure of drugs from his person, Barnes was charged with separate counts of unlawfully selling and possessing drugs. At the conclusion of a jury trial, Barnes was acquitted of the drug sale charge and convicted of the drug possession charge. The City of New York and the defendant police officers moved to dismiss Barnes's civil action on a number of different grounds, and the district court granted the defendants' motion in full.

We agree with the district court's dismissal with respect to all of the federal claims alleged by Barnes except for the dismissal of his due process claim based on the use of fabricated evidence as to the drug sale charge of which he was acquitted. Specifically, the district court erred in concluding that because Barnes was arrested, detained, prosecuted, and convicted for drug possession simultaneous to the drug sale proceedings, this precludes, as a matter of law, his ability to plead a deprivation of liberty caused by the drug sale prosecution.

3

Because the prosecution of an individual based on fabricated evidence may itself constitute a deprivation of liberty for purposes of the due process right to a fair trial, Barnes was not required to show that his drug sale prosecution resulted in additional custody or a conviction in order to sufficiently allege a claim at the pleading stage. Therefore, we **AFFIRM IN PART** and **VACATE IN PART** the district court's dismissal of Barnes's claims and **REMAND** for proceedings consistent with this Opinion.

## BACKGROUND

On January 21, 2014, Tommy Barnes was arrested by Defendants-Appellees Sergeant Kenneth Caesar, Officer Michael Manetta, and Officer Nicholas Mauceli (the "Defendant Officers") of the City of New York Police Department for allegedly selling drugs. Officer Manetta executed a Criminal Court complaint that same day, attesting that Officer Mauceli witnessed Barnes exchange money with another individual and recovered from Barnes's person a container "inside of which were twenty six (26) bags containing crack cocaine." Dist. Ct. Dkt. 63-3. Barnes was detained following his arrest.

Barnes stood trial for both criminal sale of a controlled substance and criminal possession of a controlled substance. The Defendant Officers testified at

trial, including as to the alleged drug exchange. In June 2016, a jury acquitted Barnes of the drug sale charge but found him guilty of drug possession, and he was sentenced principally to fifteen years' imprisonment. *See People v. Barnes*, 173 A.D.3d 565 (1st Dep't 2019).

Barnes, proceeding *pro se*, filed this civil suit in federal district court on August 7, 2018, against the Defendant Officers and the City of New York (together, "Defendants"),[1] alleging that the Defendant Officers falsely claimed that they observed Barnes selling a controlled substance and that they conveyed these false statements to the New York County District Attorney's Office, resulting in Barnes's prosecution. Barnes asserted 42 U.S.C. § 1983 claims of fabricated evidence, malicious prosecution, false arrest, excessive use of force, unlawful search and seizure, failure to intervene, abuse of process, and violations of his rights to a fair trial and due process; a 42 U.S.C. § 1985 conspiracy claim; and New York state law claims. Defendants moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Barnes opposed the motion and also asked the district court to construe his § 1983 suit as a habeas petition.

---

[1] Because Barnes does not address on appeal the dismissal of his claims against the City of New York, we consider these claims abandoned. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92–93 (2d Cir. 1995).

The district court granted Defendants' motion. *Barnes v. City of New York*, No. 18-CV-7119, 2020 WL 6947424 (S.D.N.Y. Nov. 25, 2020) (Nathan, *J.*). The district court dismissed as time-barred Barnes's claims for false arrest, excessive force, unlawful search and seizure, failure to intervene, and conspiracy. *Id.* at *2–3. The district court also dismissed Barnes's abuse of process claim, reasoning that Barnes did not allege that state officials had a collateral objective other than his conviction. *Id.* at *6. The district court similarly dismissed Barnes's malicious prosecution claim, concluding that he failed to show a deprivation of liberty based on the drug sale charge because he was detained and imprisoned for drug possession at the same time. *Id.* at *5–6. Finally, as to Barnes's fabricated-evidence claim, the district court concluded that Barnes failed to plausibly allege that the officers knowingly made false statements and that the officers' statements, even if knowingly fabricated, had caused a deprivation of liberty—again because Barnes "would have been held in the same place for the same amount of time" on account of his charge and conviction of drug possession. *Id.* at *4–5. Having dismissed Barnes's federal claims, the district court declined to exercise supplemental jurisdiction over Barnes's claims arising under New York law. *Id.* at *10. The

district court did not address Barnes's request to construe his complaint as a petition for habeas relief. This appeal followed.

We review *de novo* the district court's grant of judgment on the pleadings, accepting all factual allegations as true and drawing all reasonable inferences in Barnes's favor. *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301, 305 (2d Cir. 2021). Barnes's *pro se* submissions are reviewed with "special solicitude" and "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (internal quotation marks, emphasis, and citations omitted).

For the reasons explained below, we **AFFIRM** in part and **VACATE** in part the district court's dismissal of Barnes's claims.

## DISCUSSION

On appeal, Barnes challenges the district court's dismissal of his arrest-related, abuse of process, malicious prosecution, and fabricated-evidence claims. He also asserts that the district court erroneously failed to construe his § 1983 suit as also seeking habeas relief. We address these arguments in turn.

**Arrest-Related and Abuse of Process Claims**

The district court properly dismissed Barnes's false arrest, excessive force, unlawful search and seizure, failure to intervene, and § 1985 conspiracy claims as time-barred. Although state law determines the statute of limitations, federal law governs the accrual of claims, and claims brought under §§ 1983 and 1985 typically accrue "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Beach*, 296 F.3d 76, 80–81 (2d Cir. 2002) (internal quotation marks omitted); *see Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994) (applying same accrual and tolling rules under both §§ 1983 and 1985). In New York, such actions are subject to a three-year statute of limitations. *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *Cornwell*, 23 F.3d at 703; *see* N.Y. C.P.L.R. § 214 (McKinney 2021).

Barnes's arrest-related claims began to accrue when he was arrested, charged, and detained in January 2014. *See Pearl*, 296 F.3d at 85 (plaintiff was aware of cause of action at time of arrest). Barnes filed his complaint in August 2018, over a year after the limitation period expired in January 2017. The district court thus properly dismissed these claims as time-barred.

The district court also properly dismissed Barnes's abuse of process claim, which was based on the filing of an allegedly false criminal complaint, because

8

Barnes did not allege that the arresting officers had a collateral purpose beyond his prosecution. *Morales v. City of New York*, 752 F.3d 234, 238 (2d Cir. 2014) (per curiam) ("In order to state a [§ 1983] claim for abuse of process, a plaintiff must establish that the defendants had an improper *purpose* in instigating the action . . . [and] that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." (alterations in original) (quoting *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003))).

**Malicious Prosecution Claim**

Barnes's malicious prosecution claim as to the drug sale charge was properly dismissed. However, we affirm the dismissal on a different ground than that relied upon by the district court, which held that Barnes failed to show a deprivation of liberty caused by the drug sale charge, given his contemporaneous detention and conviction on the drug possession charge. Malicious prosecution claims sound in the Fourth Amendment, which proscribes the "wrongful initiation of charges without probable cause." *Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022). "[A] Fourth Amendment claim under § 1983 for malicious prosecution requires the plaintiff to show a favorable termination of the underlying criminal case against him." *Id.* at 1338. Here, although Barnes was acquitted of the drug sale

9

charge, he was convicted of the drug possession charge. He thus cannot allege a favorable termination of his criminal proceedings for purposes of his malicious prosecution claim. *See DiBlasio v. City of New York*, 102 F.3d 654, 658–59 (2d Cir. 1996) (affirming dismissal of malicious prosecution cause of action where defendant was acquitted of criminal sale of a controlled substance but convicted of criminal possession of a controlled substance). We accordingly affirm the dismissal of Barnes's malicious prosecution claim because he cannot show that his "criminal prosecution ended without a conviction." *Thompson*, 142 S. Ct. at 1341.

**Fabricated-Evidence Claim**

The district court erred, however, by concluding that Barnes did not sufficiently plead his fabricated-evidence claim because he failed to allege a deprivation of liberty caused by the drug sale charge. While it is true that claims based on a deprivation of liberty under the Fourth Amendment may require custody or conviction, a Fourteenth Amendment claim based on fabricated evidence does not. Because Barnes's fabricated-evidence claim sounds in the Due Process Clause, it is not defeated by the fact that Barnes also was in custody for, convicted of, and sentenced on the drug possession charge. The fabricated-evidence claim seeks redress for Barnes's *prosecution* on the drug sale charge of

10

which he was acquitted and which he plausibly alleges was tainted by fabricated evidence. As discussed below, we hold that Barnes sufficiently pleaded the elements of this claim.

"To succeed on a fabricated-evidence claim, a plaintiff must establish that 'an (1) investigating official (2) fabricate[d] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffe[red] a deprivation of life, liberty, or property as a result.'" *Ashley v. City of New York*, 992 F.3d 128, 139 (2d Cir. 2021) (alterations in original) (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)).

A § 1983 plaintiff "may sue for denial of the right to a fair trial based on a police officer's fabrication of information . . . when the information fabricated is the officer's own account of his or her observations of alleged criminal activity, which he or she then conveys to a prosecutor." *Garnett*, 838 F.3d at 274. That is what Barnes alleged here.

As an initial matter, Barnes met his pleading obligation to present more than conclusory allegations that the officers fabricated the drug sale account. He alleged that he was talking to a friend when the Defendant Officers arrested him; that the Defendant Officers knowingly lied to the prosecutor in relaying that they

11

witnessed Barnes sell drugs; that a prosecution was commenced based on fabricated evidence; that fabricated evidence was adduced at trial; and that Barnes was ultimately acquitted of the drug sale charge. These are more than "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (internal quotation marks omitted). At this stage, these allegations are sufficient to satisfy the first four elements of a fabricated-evidence claim. *See Ashley*, 992 F.3d at 139. Further, before discovery, it is unclear what other facts Barnes could be expected to allege in order to show that Defendants' conduct was knowing, as opposed to mistaken. *See Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) ("The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion."). For these reasons, the district court erred in concluding that Barnes did not plausibly allege that the Defendant Officers knowingly made false statements.

Likewise, as we explain below, Barnes's allegations regarding the use of fabricated evidence are sufficient as to the fifth element, which requires a deprivation of liberty. *See Garnett*, 838 F.3d at 277. The district court, applying the same reasoning it used to analyze the malicious prosecution claim, concluded that

12

Barnes failed to allege a deprivation of liberty as to the drug sale charge because he was held in custody for and convicted of the drug possession charge during the same period. Thus, the district court reasoned, because Barnes served no additional time in custody, he could not show a deprivation of liberty that was caused by the allegedly fabricated evidence related to the drug sale. This was error.

First, it bears emphasizing that fabricated-evidence and malicious prosecution claims address different rights. While fabricated-evidence claims allege violations of the right to due process under the Fifth and Fourteenth Amendments, malicious prosecution claims essentially allege violations of the Fourth Amendment right to be free from unreasonable seizure. As a result, the claims have different standards. *See Smalls v. Collins*, 10 F.4th 117, 132–33 (2d Cir. 2021).

Moreover, to insist that a deprivation of liberty requires custody or a conviction overlooks the fact that Barnes's prosecution on the drug sale charge is itself a deprivation of liberty. For fabricated-evidence claims based on due process, we have previously recognized that a plaintiff's "prosecution" can be a "deprivation of liberty." *Ashley*, 992 F.3d at 139 (describing "judicial proceedings"

13

as "liberty-depriving" in the context of a fabricated-evidence claim). The use of fabricated evidence in initiating a prosecution or at trial may amount to a deprivation of liberty even in the absence of a conviction based on the fabricated evidence and even when, as here, a plaintiff simultaneously was charged, detained, tried, and convicted for a separate offense.

Barnes's prosecution for drug sale on the basis of allegedly fabricated evidence deprived him of liberty in violation of his right to due process. This is true even without reference to the time Barnes spent in pre-trial detention for both the drug sale charge and the drug possession charge. Barnes's *prosecution* for the drug sale charge was a violation of due process because liberty may be deprived by consequences beyond custody. As we have said, "being framed and falsely charged damages an individual's reputation, requires that individual to mount a defense, and places him in the power of a court of law." *Garnett*, 838 F.3d at 279 (alteration and internal quotation marks omitted). These non-custodial "collateral consequences," *id.*, are not the same for every offense in a multi-count prosecution. The reputational damages, defenses that must be mounted, and contours of the court's power over a defendant can all differ when the defendant is prosecuted for a drug sale charge in addition to or instead of being prosecuted for a drug

14

possession charge.[2] Barnes was prosecuted for two different charges and suffered different deprivations of liberty as a result. One of these prosecutions was allegedly based on fabricated evidence, in violation of due process.

In fact, we have held that there may be a violation of due process based on fabricated evidence even without the use of fabricated evidence at trial because the "fair trial right protects against deprivation of liberty that results when a police officer fabricates and forwards evidence to a prosecutor that would be likely to influence a jury's decision, *were that evidence presented to the jury.*" *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 250 (2d Cir. 2020), *cert. denied sub nom. City of New York v. Frost*, 142 S. Ct. 1666 (2022). In *Frost*, an allegation that fabricated evidence influenced the decision to initiate prosecution was enough to state a due process claim, even though the allegedly fabricated evidence was not introduced at trial. *Id.* at 248–50. This is because the forwarding of the evidence may have resulted in the "liberty-depriving" occurrence of Frost's prosecution. *Ashley*, 992 F.3d at 139;

---

[2] Regarding reputational damage, an accusation of being a drug dealer would certainly seem to be more damaging than being accused of being a possessor, and perhaps merely a user, of drugs. Similarly, a person charged only with possession based on the recovery of drugs from his person, as Barnes may have been in the absence of the allegedly fabricated evidence of police witnessing a sale, would have had a wider range of defenses that he could mount, including that the drugs in his possession were for personal use, and would not have had to raise a defense challenging the credibility of the police.

*see Frost*, 980 F.3d at 251 (explaining same).  Here, not only did Barnes allege that fabricated evidence resulted in his prosecution, but, unlike in *Frost*, the allegedly fabricated evidence was presented to the jury during Barnes's trial for the drug sale charge.  This was more than sufficient to allege a deprivation of liberty.

In rejecting our conclusion that Barnes has alleged a deprivation of liberty sufficient for his fabricated-evidence claim to proceed, the dissent, despite acknowledging the broad due process foundation of a fabricated-evidence claim, ultimately recognizes only custody as a deprivation of liberty.  Thus, for the dissent, the bottom line is that because "Barnes 'would have been held in the same place for the same amount of time,'" even without the fabricated-evidence charge, *post* at 5, his claim must fail given that he alleges no "additional" liberty deprivation traceable to the fabricated evidence, *post* at 7, "that he would not have already suffered based on the possession charge alone," *post* at 1.  Contrary to the dissent's suggestion, that is not the law of this Circuit.

Whether the deprivation is custodial or noncustodial, "we have long held 'that Section 1983 liability attaches for knowingly falsifying evidence even where there *simultaneously* exists a lawful basis for the deprivation of liberty' that the plaintiff suffered."  *Smalls*, 10 F.4th at 132 (alteration omitted) (emphasis added)

16

(quoting *Victory v. Pataki*, 814 F.3d 47, 64 (2d Cir. 2016)) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)).  Applied to Barnes's fair trial claim, this means that even if the simultaneous drug possession charge of which Barnes was convicted provided a lawful basis for some of the deprivations Barnes suffered, it would not sever the causal link between the fabricated evidence and those same deprivations, as well as others, that Barnes suffered as a result of the drug sale prosecution.

In *Ricciuti*, this court recognized that a defendant's fabricated-evidence claim sufficiently alleged a deprivation of liberty even though the defendant was simultaneously prosecuted for additional counts that resulted in his custody.  *See* 124 F.3d at 129–30. While the plaintiffs in *Ricciuti* were charged with felony assault and misdemeanor aggravated harassment, it was the less serious offense—the aggravated harassment—that was allegedly based on fabricated evidence.[3]

---

[3] The plaintiffs in *Ricciuti* were initially charged with second-degree assault, a class D felony punishable by imprisonment for up to seven years.  *Ricciuti*, 124 F.3d at 126; N.Y. Penal Law §§ 120.05, 70.00.  The additional charge, based on fabricated evidence, was second-degree aggravated harassment—a class A misdemeanor punishable by imprisonment for one year at most.  *Ricciuti*, 124 F.3d at 126–27; N.Y. Penal Law §§ 240.30, 70.15.  The additional charge based on fabricated evidence thus carried a much *smaller* penalty than the charge not based on fabricated evidence.  Even when the assault charge was later reduced to the third degree, it became a class A misdemeanor—the *same* as the additional harassment charge based on fabricated evidence.  *Ricciuti*, 124 F.3d at 127; N.Y. Penal Law § 120.00.

17

Although the fabricated evidence in *Ricciuti* caused the assault to be classified as bias related, neither this classification nor the charge itself created additional custodial consequences. In fact, it was the felony assault charge *alone* that rendered the plaintiffs "ineligible for release on desk appearance tickets" and thus caused them "to remain in jail for more than 30 hours." *Id*. at 126; *see* N.Y. Crim. Proc. Law § 140.20(3) (McKinney 1988) (requiring appearance tickets or pre-arraignment bail for non-felony offenses). Despite the fact that the misdemeanor charge based on fabricated evidence resulted in no additional incarceration, we held that the claim could go forward.

This court's holding in *Ricciuti* could not have been any clearer: "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages." 124 F.3d at 130. The instant case fits *Ricciuti* to a tee.

Moreover, our recognition that prosecution itself is a deprivation of liberty does not dispense with the causation requirement, as argued by the dissent, but it does make the causation in this case obvious. The allegedly false statement made

18

to the prosecutor—that an officer saw Barnes selling drugs—was indisputably a cause of Barnes's prosecution for drug sale. Barnes's prosecution for drug sale deprived him of liberty independently of whatever consequences flowed from the drug possession charge.[4]

By arguing that the fact of Barnes's drug possession charge defeats causation for his fabricated-evidence claim based on the drug sale charge, the dissent repackages the probable cause defense under the label of proximate cause and attempts to insert that defense into the due process analysis. The purported analogy is simple. When the police's fabrication of evidence results in a person being charged with a crime, that person's *Fourth Amendment claims* will be defeated if there was independent *probable cause* for the deprivation of liberty. *Frost*, 980 F.3d at 242. Under the dissent's framework, when the police's fabrication of evidence results in a person being charged with a crime, that person's *Fifth*

---

[4] The causation here is far more obvious than in *Ashley*, a case the dissent emphasizes to make the unremarkable point that causation sometimes cannot be shown. Ashley was initially prosecuted on a complaint that contained allegedly false evidence. *Ashley*, 992 F.3d at 133–34. The first complaint was superseded by a second, which contained different allegedly false evidence but charged Ashley with the same offenses. *Id.* at 134. Ashley based his fabricated-evidence claim solely on the first complaint and lost at trial, where his motion for judgment as a matter of law was denied. *Id.* at 135. Reviewing the denial, this Court held simply "that the evidence at trial did not establish causation as a matter of law." *Id.* at 139

*Amendment claims* will be defeated if there was an independent *proximate cause* for the deprivation of liberty. However, "probable cause, which is a Fourth Amendment concept, should not be used to immunize a police officer who violates an arrestee's non-Fourth Amendment constitutional rights." *Garnett*, 838 F.3d at 278 (citing *Ricciuti*, 124 F.3d at 129–30). While a malicious prosecution claim will be defeated by a showing of probable cause (that is, by a showing of an independently reasonable basis for the deprivation of liberty), a fabricated-evidence claim will not. *Id.* We have repeatedly rejected the effort to import probable cause into the due process analysis.

In *Frost*, we rejected this misapplication of the causation requirement for two reasons. First, "even if a privileged arrest accounted for at least some portion of the deprivation of a § 1983 plaintiff's liberty, the plaintiff may still suffer a deprivation of liberty as a result of an officer's fabrication." *Frost*, 980 F.3d at 248 (alterations, citation, and internal quotation marks omitted). Second, a prosecutor's decision as to whether to pursue charges may depend on their overall assessment of the case's strength, "which in turn may be critically influenced by

fabricated evidence," even where other corroborating evidence also exists. *Id.* (internal quotation marks omitted).[5]

We encountered the dissent's view of the causation requirement also in *Garnett*, where the defendant officer argued that we should "interpret[] the 'as a result' language of the fifth element [of a fabricated-evidence claim] to mean that the falsified information must be the *only* reason the plaintiff suffered a deprivation of his liberty, such that a privileged arrest is sufficient to negate this element of an arrestee's Section 1983 claim." 838 F.3d at 277. We noted that this maneuver "places more weight on the 'as a result' language than it can bear," and we rejected it. *Id.*

---

[5] The dissent asserts that in *Frost* "the evidence indicated that, but for the fabricated identification by the non-suspect witness, Frost may not have been prosecuted at all." *Post* at 10. In fact, Frost neither adduced such evidence nor made such an argument. Following a six-month lull in a murder investigation, detectives allegedly coerced a witness (Vega) into identifying Frost as the shooter. *Frost*, 980 F.3d at 240. Three days later, however, "in an apparent coincidence," detectives encountered and interviewed *another* witness (McLaurin) who *also* identified Frost as the killer. *Id.* at 239. This second identification, independent from the fabricated evidence, meant that Frost would have been prosecuted even without the fabricated evidence. Indeed, the detective defendants made exactly that argument, and the court found it "irrelevant that 'there was sufficient evidence to prosecute Frost without Vega's [coerced] identification.'" *Id.* at 248. The dissent's assertion is thus flatly wrong and fails to distinguish *Frost* from the case at hand.

21

Finally, we rejected an attempt to import probable cause into the due process analysis also in *Ricciuti*. We did so "decisively" and in terms the *Garnett* court saw fit to quote at length. *Id.* at 275. The occasion presents itself once again:

> This argument—an ill-conceived attempt to erect a legal barricade to shield police officials from liability—is built on the most fragile of foundations; it is based on an incorrect analysis of the law and at the same time betrays a grave misunderstanding of those responsibilities which the police must have toward the citizenry in an open and free society. No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee. To hold that police officers, having lawfully arrested a suspect, are then free to fabricate false confessions at will, would make a mockery of the notion that Americans enjoy the protection of due process of the law and fundamental justice. Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable corruption of the truth-seeking function of the trial process.

*Ricciuti*, 124 F.3d at 130 (internal quotation marks omitted).

In sum, Barnes's claim of fabricated evidence seeks redress for an unfair prosecution and trial in violation of his right to due process, and he has sufficiently pleaded the elements of this claim. This claim is distinct from Barnes's Fourth Amendment-based claims, which, as discussed above, were properly dismissed.

22

Nevertheless, in order to sustain a fabricated-evidence claim, Barnes must also show that his acquittal on the drug sale charge qualified as a "favorable termination," even though he was also convicted of drug possession. *See McDonough v. Smith*, 139 S. Ct. 2149, 2156–57 (2019) (noting a fabricated-evidence claim's "favorable termination" requirement). Because the district court dismissed the fabricated-evidence claim on other grounds, it did not specifically address this requirement, and it should do so in the first instance, particularly in light of our recent opinion in *Smalls*, which was released subsequent to the district court's decision. We note that *Smalls* instructs, for purposes of a fabricated-evidence claim's favorable termination requirement, that "all that is required is that the underlying criminal proceeding be terminated in such a manner that the lawsuit does not impugn an *ongoing* prosecution or *outstanding* conviction." 10 F.4th at 139.

We accordingly vacate the district court's dismissal of Barnes's fabricated-evidence claim and remand for consideration consistent with this Opinion. Further, because we vacate the dismissal of this federal claim, we also vacate the dismissal of Barnes's state law claims to allow the district court to reconsider whether to exercise supplemental jurisdiction over these claims. *See Rivera v.*

23

*Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 27 (2d Cir. 2014) (vacating dismissal of state law claims where this court partially vacated the dismissal of federal law claims).

Lastly, in his opposition to Defendants' motion below, Barnes requested that the district court construe his § 1983 suit as also seeking habeas relief. The district court did not explicitly address this request. We know of no basis "for the view that a petitioner may not seek relief under both a habeas statute and § 1983 in a single pleading." *Thompson v. Choinski*, 525 F.3d 205, 210 (2d Cir. 2008). On remand, the district court should also consider whether Barnes's request to construe his complaint as seeking habeas relief should be construed as a motion to amend and, if so, whether amendment to raise habeas claims should be granted.

## CONCLUSION

For the reasons set forth above, we **AFFIRM IN PART** and **VACATE IN PART** the district court's dismissal of Barnes's claims and **REMAND** for further proceedings consistent with this Opinion.

24

RICHARD J. SULLIVAN, *Circuit Judge*, dissenting in part:

I agree with the majority on all points except one: I would affirm the dismissal of Barnes's fabricated-evidence claim under 42 U.S.C. § 1983 because he has failed to plausibly allege a deprivation of life, liberty, or property *caused by* the fabricated evidence. Although Barnes alleges that an officer falsely claimed to have seen him sell drugs – resulting in his subsequent prosecution for criminal sale of a controlled substance – officers did in fact find drugs on the scene so that he was simultaneously prosecuted, detained, tried, and convicted of felony drug possession. In other words, he alleges no deprivation of liberty, custodial or non-custodial, resulting from the alleged fabrication that he would not have already suffered based on the possession charge alone. Because the law of this Circuit restricts fabricated-evidence claims to those cases in which a plaintiff "suffers a deprivation of life, liberty, or property *as a result*" of an officer's forwarding of false information to prosecutors, *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (emphasis added), the district court correctly dismissed Barnes's claim.

We have explained that a section 1983 fabricated-evidence claim is rooted in the Due Process Clauses of the Fifth and Fourteenth Amendments, which

"guarantee[] a criminal defendant's right to a fair trial." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 244 (2d Cir. 2020) (internal quotation marks omitted), *cert. denied*, 142 S. Ct. 1666 (2022). "Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable corruption of the truth-seeking function of the trial process, and deprivation of life, liberty, or property under such circumstances violates the accused's right to due process." *Smalls v. Collins*, 10 F.4th 117, 133 (2d Cir. 2021) (internal quotation marks omitted).[1]

"The manufacture of false evidence, in and of itself," however, "does not impair anyone's liberty, and therefore does not impair anyone's constitutional right." *Zahrey v. Coffey*, 221 F.3d 342, 348 (2d Cir. 2000) (internal quotation marks omitted). A successful claim for the denial of the right to a fair trial based on fabricated evidence thus requires more than the mere allegation of falsified evidence; a plaintiff must also allege a deprivation of life, liberty, or property that is the "legally cognizable result of" the fabricated evidence. *Id*. at 349–51. Although the fabricated evidence need not be the *only* cause for the deprivation, it

---

[1] "Notwithstanding the nomenclature, a criminal defendant's right to a fair trial protects more than the fairness of the trial itself," and a plaintiff may bring a fair trial claim based on fabricated evidence even "when no trial occurs at all." *Frost*, 980 F.3d at 249.

certainly must be *a* cause. *See Garnett*, 838 F.3d at 277. Accordingly, "to establish a section 1983 fair-trial claim based on fabrication of evidence, a plaintiff must demonstrate that 'an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, *and* (5) the plaintiff suffers a deprivation of life, liberty, or property *as a result*.'" *Smalls*, 10 F.4th at 132 (quoting *Garnett*, 838 F.3d at 279) (emphasis added); *see also, e.g.*, *Ashley v. City of New York*, 992 F.3d 128, 139 (2d Cir. 2021) (same); *Ganek v. Leibowitz*, 874 F.3d 73, 90 (2d Cir. 2017) (same).

Furthermore, contrary to the majority's implication, this well-established causation requirement is completely consistent with the notion that fabricated-evidence claims – unlike malicious-prosecution claims – will not be defeated by a privileged arrest or evidence of probable cause. *See* Maj. Op. at 16–17, 22. Because a malicious-prosecution claim implicates the "right under the Fourth Amendment to be free of unreasonable seizure," and because the "touchstone" of a Fourth Amendment claim is "reasonableness," such a claim cannot survive a showing of probable cause. *Smalls*, 10 F.4th at 132–33 (citation omitted). On the other hand, as already discussed, a fabricated-evidence claim safeguards the Fifth and Fourteenth Amendments' right not to be deprived of "life,

3

liberty, or property, without due process of law." *Id.* at 133 (quoting U.S. Const. amends. V, XIV). As a result, a fabricated-evidence claim "can stand even if the officer had probable cause to arrest" because "an arrest in itself may involve only a limited deprivation of liberty" and "*further* deprivation[s] of liberty *can result from* the fabrication of evidence even if the initial arrest is lawful." *Garnett*, 838 F.3d at 277–78 (emphasis added); *see also Frost*, 980 F.3d at 248; *Ganek*, 874 F.3d at 91. In other words, even when explaining why probable cause is not a defense to a fabricated-evidence claim, we have repeatedly reiterated the principle that the fabricated evidence still must be causally linked to "some" deprivation of life, liberty, or property. *E.g.*, *Garnett*, 838 F.3d at 277.

The majority effectively disregards the crucial causal requirement in holding that Barnes successfully pleaded his fabricated-evidence claim. Barnes's claim is premised on his allegation that police officers falsely stated that they had witnessed him selling drugs and relayed that information to prosecutors, who then prosecuted him. But officers on the scene *also* recovered "twenty[-]six (26) bags containing crack cocaine" in Barnes's possession, Maj. Op. at 4 (quoting Dist. Ct. Doc. No. 63-3), and he was subsequently charged with *both* criminal possession of a controlled substance with intent to sell in violation of N.Y. Penal Law § 220.16

4

and criminal sale of a controlled substance in violation of N.Y. Penal Law § 220.39 – each a felony of the same level. Though Barnes was ultimately acquitted of drug sale, he was convicted of drug possession with intent to sell and sentenced to fifteen years in prison. Thus, even absent the alleged fabrication, Barnes "would have been held in the same place for the same amount of time." *Id.* at 6 (quoting *Barnes v. City of New York*, No. 18-cv-7119 (AJN), 2020 WL 6947424, at *5 (S.D.N.Y. Nov. 25, 2020)).

Unable to show that Barnes has plausibly alleged a custodial deprivation of liberty as a result of the fabricated evidence, the majority instead concludes that Barnes has adequately pleaded causation because his prosecution for the drug sale resulted in liberty-depriving "non-custodial collateral consequences." *Id*. at 14 (internal quotation marks omitted). The majority's logic is as follows. First, the majority posits that, even absent pretrial detention, prosecutions deprive defendants of liberty by harming their reputation, forcing them to mount a defense, and placing them in the power of a court of law. *See id*. at 13–14. Next, in its key rhetorical move, the majority conclusorily asserts that these non-custodial liberty deprivations associated with prosecutions are "different" for a charge for drug sale than for a charge for drug possession with intent to sell. *Id*.

5

at 14–15 & n.2.  Having mechanically separated the non-custodial liberty deprivations for a drug-sale prosecution from the non-custodial liberty deprivations for a drug-possession-with-intent-to-sell prosecution, the majority then concludes that the allegedly fabricated evidence that formed the basis for Barnes's drug-sale charge was the but-for cause of some liberty deprivation.  *See id.*; *see also id.* at 19–20.

I agree with the majority's analysis up to a point.  To be sure, the liberty interest safeguarded by the Constitution's Due Process Clauses "denotes not merely freedom from bodily restraint."  *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).  And our case law does seem to suggest that the act of prosecution itself amounts to a non-custodial liberty deprivation, since it "damages an individual's reputation, requires that individual to mount a defense, and places him in the power of a court of law."  *Garnett*, 838 F.3d at 279 (internal quotation marks and alterations omitted); *see also Ashley*, 992 F.3d at 139.[2]  But even if the non-custodial

---

[2] Given the language of *Ashley* and *Garnett*, I assume for purposes of this dissent that prosecutions are inherently associated with non-custodial liberty deprivations, but I note that I am not convinced that this is correct.  Reputational damage alone is not considered a deprivation of liberty.  *See Paul v. Davis*, 424 U.S. 693, 701 (1976); *see also Patterson v. City of Utica*, 370 F.3d 322, 329–30 (2d Cir. 2004).  And holding that other non-custodial aspects of prosecution – i.e., forcing a criminal defendant to submit to the court's power and mount defenses – are deprivations of liberty seems "anomalous," as it reduces to a holding "that [judicial proceedings] deprive[] a criminal defendant of liberty without due process of law, when the purpose of the [judicial

6

consequences of a prosecution are potentially liberty depriving, "[t]he question remains whether the liberty deprivations that occurred are *legally traceable* back . . . [to the] act of fabrication." *Zahrey*, 221 F.3d at 352 (emphasis added). And, here, I fail to see plausible allegations in Barnes's complaint that his prosecution for drug sale caused any *additional* non-custodial liberty deprivations – i.e., subjected him to additional reputational damage, added to the defenses he was required to mount, and added to the contours of the court's power – *separate and apart* from the corresponding non-custodial liberty deprivations that would have occurred anyway on account of his prosecution for drug possession with intent to sell.[3]

Indeed, an analysis of the cases relied upon by the majority reveals that they cannot possibly bear the weight of the majority's holding. As already discussed,

---

proceedings] is to *effectuate* due process." *See Bianchi v. McQueen*, 818 F.3d 309, 319–20 (7th Cir. 2016) (citation omitted).

[3] The majority speculates that "an accusation of being a drug dealer would certainly seem to be more damaging than being accused of being a possessor, and perhaps merely a user, of drugs" and that "in the absence of the allegedly fabricated evidence of police witnessing a sale," Barnes "would have had a wider range of defenses that he could mount, including that the drugs in his possession were for personal use, and would not have had to raise a defense challenging the credibility of the police." Maj. Op. at 15 n.2. Not only does Barnes himself not allege any facts to support this theory, but the majority offers no explanation as to (1) why being charged with drug sale and drug possession with intent to sell would carry materially different reputational harms, (2) why it would have been inconsistent for Barnes to contend both that he did not sell drugs and he did not possess drugs with the intent to sell them because the drugs were for personal use, or (3) why the credibility of the police was not also relevant to the charge for drug possession with intent to sell.

7

*Garnett* and *Ashley* may contain suggestions that the process of prosecution, even without pretrial detention, constitutes a liberty deprivation. *See Garnett*, 838 F.3d at 279; *Ashley*, 992 F.3d at 139. But, unlike our case, neither *Garnett* nor *Ashley* involved multi-charge prosecutions where the defendant was acquitted on some charges but not on others, and thus neither case holds that the process of prosecution deprives liberty on a per-charge basis. *See Garnett*, 838 F.3d at 268–70; *Ashley*, 992 F.3d at 133–34.

Take, for example, *Ashley*. The plaintiff there was arrested and charged in New York state court on drug-possession charges. *See Ashley*, 992 F.3d at 131, 134. The original charging instrument stated that, when police executed a search warrant at a Brooklyn apartment, they found Ashley inside with the drugs. *See id.* at 131. But that statement was later shown to be false; surveillance images revealed that Ashley had arrived at the apartment after the police. *See id.* The prosecution then superseded the original charging instrument to remove the false statement, but shortly thereafter, the state court dismissed the superseding instrument *in its entirety* for "facial insufficiency." *Id.* Ashley subsequently filed a civil action in federal court under section 1983 alleging, among other things, a claim for the denial of his right to a fair trial based on the fabricated evidence in the original

8

charging instrument. *See id.* at 132. On appeal, we affirmed the district court's denial of Ashley's motion for judgment as a matter of law because the evidence was insufficient to establish causation. *See id.* at 139. Crucial to this holding was our observation that, even after the false statement came to light, "the prosecution did not drop the charges against Ashley" but instead filed a superseding instrument. *Id.* Consequently, "we [could] not say, as a matter of law, that the fabrication caused the liberty-depriving judicial proceedings." *Id.* Unsurprisingly, *Ashley* sheds no further light on whether causation would also not have been met if *some* rather than *all* charges had been dismissed. If anything, all *Ashley* does is underscore that the causal link between fabricated evidence and a corresponding deprivation of liberty is indispensable to a fair-trial claim.

Nor can the majority find support for its holding in *Frost*, in which the plaintiff alleged that a fabricated identification led to his being wrongfully charged with murder and incarcerated at Riker's Island for *over three years* until a jury acquitted him of *all* charges. *See* 980 F.3d at 239–40. In reversing the district court's grant of summary judgment in favor of the arresting officers, we held that there was sufficient evidence of causation to go to trial, since the officers had taken no action against Frost for six months following the murder; it was only after a

9

witness falsely identified Frost as the shooter that Frost was "arrested and prosecuted." *Id.* at 248. Although a second witness – who was another potential suspect – also identified Frost as the shooter between the first witness's identification of Frost and Frost's arrest, we nevertheless concluded that there was a "triable question" as to whether the false identification made by the non-suspect witness "'critically influenced' the decision to prosecute [him,] . . . *thereby resulting in* a deprivation of liberty." *Id*. at 239, 250 (quoting *Garnett*, 838 F.3d at 277) (emphasis added); *see also id.* at 248 ("[A] reasonable jury could have found that the decision to prosecute Frost would have been different if [the second witness], who was Frost's fellow suspect, was the only person to identify him."). In other words, the evidence indicated that, but for the fabricated identification by the non-suspect witness, Frost may not have been prosecuted at all.[4] And there was no doubt that the decision to prosecute led to a substantial deprivation of liberty, as Frost was detained pretrial for years before he was finally acquitted of all charges. The majority's reliance on *Frost* is thus misplaced: *Frost* does not stand

---

[4] The majority's assertion that the "second identification [by the suspect witness], independent from the fabricated evidence, meant Frost would have been prosecuted even without the fabricated evidence" is incorrect. Maj. Op. at 21 n.5. The whole point of *Frost* is that, while probable cause is not a defense to a fabricated-evidence claim, lack of causation is – but Frost succeeded in creating a triable issue as to whether the fabricated identification by the non-suspect witness, even in light of the second identification, in fact caused Frost's prosecution and detention. *See* 980 F.3d at 248.

10

for the proposition that the process of prosecution in isolation is a liberty deprivation, let alone the proposition that the process of prosecuting each individual charge constitutes separate liberty deprivations.

Finally, we turn to *Ricciuti*. As the majority describes, the two *Ricciuti* plaintiffs were initially arrested for second-degree assault, a felony, following an altercation with a New York City corrections officer. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 125–26 (2d Cir. 1997); Maj. Op. at 17 n.3 (discussing N.Y. Penal Law § 120.05). Officers then allegedly fabricated a confession in which one of the Ricciutis used racial slurs. *See Ricciuti*, 124 F.3d at 126. Apparently because the assault charges against the Ricciutis were felonies, they "were ineligible for release on desk appearance tickets[] and were forced to remain in jail for more than 30 hours." *Id.*; *see* Maj. Op. at 18.[5] Thereafter, upon receiving the Ricciutis' file, including the fabricated confession with racial slurs, the prosecutor added a charge of second-degree aggravated harassment, a misdemeanor. *See Ricciuti*, 124 F.3d at 126–27; Maj. Op. at 17 n.3; *see also* N.Y. Penal Law § 240.30 (1989) ("A person

---

[5] Some have understood *Ricciuti* to suggest that the Ricciutis were ineligible for release on desk appearance tickets and detained for thirty hours because, following the fabricated confession, the assault was classified as bias related. *See, e.g., Frost*, 980 F.3d at 261–62 (Kearse, J., dissenting). While it is true that "apparently based largely on" the fabricated confession the assault was classified as bias related, *Ricciuti*, 124 F.3d at 127, the majority appears to be correct that this may *not* have been the reason that the Ricciutis were ineligible for release on desk appearance tickets and detained for thirty hours.

11

is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he or she . . . [s]trikes, shoves, kicks, or otherwise subjects another person to physical contact, or attempts or threatens to do the same[,] because of the race, color, religion or national origin of such person[.]"). Eventually, all charges were dismissed after an officer failed to testify in support of the confession. *See Ricciuti*, 124 F.3d at 127. The Ricciutis sued in federal court under section 1983, and on appeal, we reversed the district court's grant of summary judgment to defendants on the fabricated-evidence claim. *See id.* at 127, 130.

While the majority's characterization of the *Ricciuti* facts may be accurate, the majority misses the ways in which the instant case does not "fit[] *Ricciuti* to a tee." Maj. Op. at 18. Addressing the argument that "as long as the arrest complied with the Fourth Amendment, the Ricciutis can have no claim for post-arrest fabrication of evidence," we held that, regardless of whether an officer had probable cause to arrest, "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitution right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42

12

U.S.C. § 1983." *Ricciuti*, 124 F.3d at 129–30. But the officers in *Ricciuti* – decided three years before *Zahrey* and decades before *Ashley*, *Garnett*, and *Frost* – seemingly never argued that there was in fact no liberty deprivation occasioned by the fabricated evidence because the Ricciutis would have been detained for the same amount of time and prosecuted even in the evidence's absence. The *Ricciuti* court therefore had no occasion to analyze the intricacies of causation, and at least for that reason, *Ricciuti* does not control here.[6]

In short, the majority's analysis strikes me as an unfounded extension of the law of this Circuit that goes well beyond the constitutional right vindicated by a fair-trial claim. As we noted in *Zahrey*, "the Constitution does not guarantee 'due process' in the abstract; it guarantees that 'no person shall be deprived of life, liberty, or property, without due process of law.'" 221 F.3d at 348 n.4 (quoting U.S. Const. amend. V) (alterations omitted). Accordingly, our precedents require that

---

[6] Even if *Ricciuti* is read to hold that causation can be satisfied on the basis of the reputational harm and need to mount additional defenses associated with the charges stemming from the fabricated evidence, *see* Maj. Op. at 14–15 & n.2, 17–18; *but see supra* n.2, the marginal reputational and defense-related differences between the sale and possession-with-intent-to-sell charges at issue in this case, *see supra* n.3, are a far cry from the differences between the general-assault and racially-motivated-harassment charges at issue in *Ricciuti*, *see Birnbaum v. Trussell*, 371 F.2d 672, 679 (2d Cir. 1966) (acknowledging a "substantial interest[]" in the ability to dispel allegations of racial bias that can cause one's "reputation [to] suffer[] material damage"); *see also Cockram v. Genesco, Inc.*, 680 F.3d 1046, 1054 n.4 (8th Cir. 2012) (noting that "one certainly can suffer severe reputational harm if accused of a racist act" and that accusations involving racism "can be so damaging as to make it difficult or impossible . . . to escape the stigma of that charge" (internal quotation marks and alterations omitted)).

13

a section 1983 plaintiff seeking redress for the denial of the right to a fair trial based on fabricated evidence allege a "'deprivation[] of life, liberty, or property' that occurred 'as a result' of an investigating official's 'forwarding fabricated information to prosecutors.'" *Smalls*, 10 F.4th at 142 n.11 (quoting *Garnett*, 838 F.3d at 279) (alterations omitted). Because Barnes has failed to plausibly allege any causal link between the fabricated evidence and a corresponding liberty deprivation, custodial or non-custodial, I would affirm the district court's dismissal of his fair-trial claim.[7]

---

[7] Since I would affirm the dismissal of all federal claims, I would also affirm the district court's decision not to exercise supplemental jurisdiction over the state-law claims.